[S. F. No. 5276.    Department Two.—November 18, 1910.]

ELDA MARIAN PENNEBAKER et al., Respondents, v.
SAN JOAQUIN LIGHT AND POWER COMPANY (a
Corporation), Appellant.

ELECTRIC LIGHTING COMPANY—OBLIGATION TO SHUT OFF CURRENT IN
CASE OF FIRE—NEGLIGENCE.—An electric light and power company,
under contract to supply, and engaged in the business of supplying,
light and power to a municipality and private users, and whose
distributing system was so arranged that the effect of shutting off
the current would leave a large portion of the city without elec-
tricity, was not under obligation, during the night-time, merely be-
cause it had acquired information that a fire had started somewhere
within one of the fire districts into which the city was divided, to
shut off the electric current supplying that portion of the city in
which the fire was situated.

ID.—EXTENT OF OBLIGATION.—The utmost that can be exacted of electric
lighting companies in such regard is that they shall hold themselves
in readiness to cut off the electricity when the necessity arises and
they are informed of it by proper authority.

ID.—FAILURE TO HAVE EMPLOYEE AT FIRE.—In the absence of an
ordinance imposing the duty, negligence is not imputable to an elec-
tric lighting company because it did not have an employee at the
fire, charged with the duty of disconnecting particular wires, or
signaling for the disconnection of the district.

ID.—PRESENCE OF EMPLOYEE AT FIRE AS ONLOOKER.—The fact that em-
ployees of the lighting company were at the fire merely as onlookers,
and observed the fact that wires connected with the burning build-
ing were charged with electricity, but did nothing, cannot be imputed
as negligence of the company.

ID.—FIREMAN ENTERS BUILDING AS LICENSEE—OWNER NOT OBLIGATED
TO FURNISH SAFE PLACE.—In the absence of ordinance or statute
changing the common-law rule, a fireman entering a building under
imperative public necessity is but a licensee, who assumes the risks
as he finds them, and to whom the owner of the premises owes no
special duty to maintain the premises in a safe condition.

ID.—DUTY OF COMPANY TO MAKE SAFE INSTALLATION IN BUILDING.—An
electric light or power company, using a building as a means of
transmitting into or over it power in dangerous quantities would not
necessarily be exonerated in all cases where the owner is exonerated.
Dereliction of duty might be charged, and consequent liability might
be imposed upon the electric company, if, after knowledge of the
dangerous condition, it failed promptly to remedy it.

ID.—KILLING OF FIREMAN BY ELECTRIC CURRENT.—The mere fact of the killing of a fireman, while engaged in putting out a fire in a private building, by coming in contact with a live wire which had fallen from the building and was lying in the lot on which it was situated, is not in itself sufficient to impute negligence to the electric lighting company.

ID.—ACTION TO RECOVER FOR DEATH OF FIREMAN.—EVIDENCE OF ARRANGEMENT BETWEEN CITY AND COMPANY.—In an action against the electric lighting company to recover for the death of such fireman, on the theory that it was negligent in not shutting off the electric current upon receiving information of the fire, evidence is admissible on behalf of the defendant, of an arrangement between the company and the municipality, even if. it did not have the effect of a municipal by-law, providing for the shutting off of the current, in case of fires, at the request of the fire department or city electrician.

APPEAL from a judgment of the Superior Court of Fresno County and from an order refusing a new trial. H. Z. Austin, Judge.

The facts are stated in the opinion of the court.

Frank H. Short, and F. E. Cook, for Appellant.

Larkins & Feemster, for Respondent.

HENSHAW, J.—This appeal is from the judgment and from the order denying defendant's motion for a new trial. The action is by the widow and minor child, heirs of Carl G. Pennebaker, for damages resulting from his death. Pennebaker was a member of the fire department of the city of Fresno. A fire occurred about two o'clock in the morning in a wooden building on the outskirts of the business portion of the city. Pennebaker, in the performance of his duty, went to the fire to help in extinguishing it. The complaint charged that an alarm of fire was turned into and given the fire department of the city, and at the same time "so plaintiffs are informed and believe, and upon such information and belief allege the fact to be, an alarm of said fire was turned into and given said defendant at its electric sub-station in said city. That by said alarm, so plaintiffs are informed and believed, and upon such information allege the fact to be, defendant was notified of the existence and apprised of the location of said fire." The complaint further charged that

wires, carrying powerful and deadly currents of electricity, were maintained by the defendant at and in the building which caught fire; that the fire continued to burn for the space of about forty minutes after the alarm was turned in. These wires were thus burned from their fastenings and fell to the ground soon after the alarm was given, continued to lie upon the ground during the greater part of the time that the fire was so burning, and while so lying upon the ground continued to be charged with electricity in dangerous and deadly quantities; that defendant neglected and carelessly permitted its wires so charged to lie upon the ground where it was necessary for persons to go and to be for the purpose of combating and extinguishing the fire. "That defendant, although notified of the existence, and apprised of the location of the fire, as aforesaid, and well knowing of the existence of its said wires at said place, and having the entire charge and control of said wires and of its said electricity and currents of electricity, and well knowing that its said wires were then and there charged with and carrying currents of electricity, and well knowing that said wires were, in the event of a fire, liable to be burned from their fastenings, and to fall to the ground and endanger the lives of people, and particularly of persons engaged in fighting the fire, and having full and ample time and opportunity to know and ascertain the condition of said wires at said time and place, and having ample and sufficient time and means to turn off said electricity and to cut said wires, and to render the same safe and harmless, negligently and carelessly failed to cut said wires, and negligently and carelessly failed to turn off said electricity, and negligently and carelessly failed to do anything, whatever, to render said wires, or any of said wires, safe and harmless during the time of said fire and while its said wires were down and lying upon the ground, as aforesaid." Issue was joined upon the material averments of negligence, and for an affirmative defense the contributory negligence of Pennebaker was charged. The cause was tried by the court without a jury, and the court gave judgment for plaintiffs, its findings conforming exactly to the allegations of the complaint.

The principal contention advanced upon this appeal is that the evidence introduced by plaintiffs, giving to it the fullest weight, utterly fails to show negligence upon the part of the

defendant. Appellant contends, for its second proposition, that if the evidence of the plaintiffs be held sufficient to charge the defendant with negligence, it must be concluded from the same evidence that the deceased was guilty of contributory negligence, and, finally, it is urged that the court erred in its ruling refusing admission to certain evidence proffered by the defendant. A statement of the substance of plaintiffs' evidence is made necessary for a consideration of appellant's contention that it utterly fails to show negligence upon its part.

The evidence disclosed that defendant, an electric light and power corporation, was under contract to supply, and engaged in supplying, light and power to the municipality of Fresno and to private users and consumers; that at two o'clock A. M. a fire was discovered in the building before mentioned. Alarms of fire from two boxes, Nos. 4 and 82, representing contiguous fire districts, were turned in well nigh simultaneously. Automatically a signal was thus given in the fire department stations, and a more general signal by the blowing of a whistle at a sub-station of the electric company, about five blocks distant from the actual location of the fire. Each of these fire districts embraced territory of five or six blocks. So that a recognition and understanding of the signal as being from district 4 or district 82 would indicate that the fire was somewhere within one of the five or six blocks embraced respectively in such district. The signal would not, and did not, of course, indicate the building, and would not and did not indicate whether the defendant company had light or power wires that would be affected by the fire, though of course there would be imputed to the company knowledge that it had such wires within the district. The firemen arrived promptly at the scene of the fire and proceeded to fight it with water and chemicals. The building was a bicycle repair shop, into which was conducted power used in operating a small lathe. The wires carried electricity which by no possibility could exceed two hundred and sixty volts; two hundred and sixty volts are not regarded as dangerous to human life, much less as deadly. These wires were burned and fell to the ground by reason of the fire, and lay upon the ground in the back yard of the premises. Certain of the firemen noticed these wires and saw by their sputtering that they

were "hot" and "carried juice." One or two of the firemen actually received shocks from these wires and jumped away. Discussion arose amongst the firemen as to whether the wires were dangerous. The fire chief testifies: "I went around in the back and there was quite a number of the boys (firemen) had been in the yard and they had come out, and of course they hadn't ought to come out, and they said the reason they came out was on account of the juice being in there. Others spoke up and said there was not enough in there to hurt anybody, and I went in there and it didn't bother me at all. I didn't feel it. I never got a particle of a shock at all." The fire being subdued in about three fourths of an hour from the time the alarm was given, the chief gave orders to his men to carry out their hose and other paraphernalia and make ready to disperse. Pennebaker, in the performance of his duty, went into the yard, his feet touched and became entangled in the wires and he pitched forward unconscious. He was dragged out by his fellows, never recovered consciousness, and died within an hour. The chief of the fire department testified that he saw one or more of the employees of the defendant at the fire, but it is not shown that they were on duty, were charged with any duty, were informed of or knew that the wires were carrying electricity or even that they were there when the wires were carrying electricity, for in a very few minutes after Pennebaker was struck down the city electrician climbed the pole and cut the wires. The city was divided by the defendant into districts, and the light and power from these districts could be turned off at the substation. A man was maintained there day and night to do this, upon proper demand. No demand or request was made in this instance. The effect in turning out the light in any one of these districts would be to leave it entirely without electric light or power. Pennebaker was a vigorous man in the prime of life.

The foregoing is a fair summarization of all the evidence upon the question of negligence presented by plaintiffs. It is the evidence to which the motion for nonsuit was addressed. It is to be noted that no knowledge was brought home to defendant that the fire had disturbed, or would in any way disturb, its wires; that if knowledge that there was a fire and the general location of that fire was imputable to defend-

ant by the blowing of the whistle, such knowledge, in the nature of things, could tell them no more than that it was in a district comprising five or six blocks. No knowledge was imputed or was imputable to defendant that the fire was even in a building containing its wires. It is to be noted, moreover, that the wires, whose detachment caused the fatal accident, did not fall upon any public way, but in the back yard of private property. Respondent contends, and the trial court took the view, that this uncontradicted evidence was legally sufficient to establish the negligence of defendant. If it did, it can be but upon one or another of two theories, both of which are advocated by respondent. First, that it was the duty of defendant to have disconnected its wires when the fire alarm was sounded. Second, that it was the duty of the defendant to have an employee at the fire, either to disconnect the wires himself or to signal to the sub-station to have it done. A third theory of respondent, broader perhaps than either of these, is that by the very happening of the accident, under the indicated circumstances, the law imputes negligence to the defendant, and that therefore the nonsuit was properly denied. This is an invocation of the doctrine *res ipsa loquitur*.

1. In support of the first contention no authority is cited, nor do we think any can be. It would compel defendant, upon the one hand, to extinguish all light and power in a district, regardless of the necessity of so doing, or be held liable for any consequences that might follow its failure. It takes no account of the fact that by so doing, in the case of a night fire, a district would be left in complete darkness, and that under such circumstances, following the alarm of fire, panic might ensue in hotels, lodging-houses, and residences, and that the resulting damage might far exceed that which the extinguishment of the lights was designed to prevent. No such rule of law exists, nor, we take it, will ever exist, and the utmost that will be exacted by lighting companies in this regard is that they shall hold themselves in readiness to cut off the electricity when the necessity arises and they are informed of it by proper authority.

2. Nor is negligence imputable to the defendant because it did not have an employee at the fire, charged with the duty of disconnecting particular wires, or signaling for the dis-

connection of the district. Any reasonable ordinance in this regard which a municipality might adopt would, of course, be upheld, and if injury resulted from the negligent failure of the light and power company to obey the terms of such ordinance, undoubtedly negligence could be predicated upon it. But here no such exactions were required by any ordinance, and it cannot be held that the defendant failed in any duty with which the law charged it in not having such employee in attendance at every fire. Indeed, in *New Omaha Thomson-Houston Electric Light Co.* v. *Anderson,* 73 Neb. 84, [102 N. W. 89], where an ordinance required electric companies to send one or more competent linemen to fires to report to the city engineer and remove or disconnect wires where directed, the court held that this imposed no further duty upon the company than that of so doing, and that the company was not liable, even when it was shown that the company's linemen invited the firemen to proceed to lower the ladders, declaring that the wires with which it thereupon came in contact, and which proved to be heavily charged, were "dead." The court ruled that his declaration to that effect, being entirely outside of the line of his duty, could not charge the defendant company; that defendant light company owed no duty to the firemen to warn them of danger either in ascending or descending the ladder or in removing it from between the wires after the fire was extinguished. This was a duty, if such duty existed, which, under the ordinance pleaded, devolved upon the officers of the city. (See, also, *Trouton* v. *New Omaha Thomson-Houston Elec. Light Co.,* 77 Neb. 821, [110 S. W. 569].) This same reasoning and authority answer the argument of respondent that employees of the defendant were at the fire that night and saw the fire and "undoubtedly the flashing of the electricity and the condition of the wires, yet they did nothing." In addition to what has been said in this regard to the effect that they were not there in the performance of any duty, and that it is not shown that they were there when the wires were charged with the electricity, respondent's argument, for a still further reason, is *felo de se.* For if defendant's employee, a mere bystander and lookeron, can be charged with knowing that electricity in dangerous quantities was escaping from his employer's wires, how much more is Pennebaker himself charged

with this knowledge, when he was a fireman, in the immediate vicinity of the wires, when some of his fellow-firemen had received shocks, when the matter had been discussed amongst them, when a cry of danger had been given, and when in the resulting conversation it had been argued that the wires were not carrying power enough to injure anybody. Clearly, if knowledge of a dangerous condition arising out of the presence of the electric current in the fallen wires was chargeable to an employee of defendant, under these circumstances, it was even more chargeable against Pennebaker, and the conclusion would be unanswerable that his own negligence, after such knowledge, proximately contributed to his death.

3. The third theory, and that perhaps most strongly relied upon by respondent, is that the facts proved established negligence *per se*. Herein much reliance is placed upon the decision of the supreme court of Missouri in *Gannon* v. *Laclede Gas Light Co.*, 145 Mo. 502, [46 S. W. 968, 47 S. W. 907]. This decision was rendered by a divided court. While there are expressions in the prevailing opinion in accord with respondent's contention, the real question decided was quite different. The action, like the one under consideration, was to recover damages for the death of a husband and father, himself a fireman. The proof by plaintiff was merely to the effect that the deceased, while in the performance of his duty as fireman at a fire, was killed by coming in contact with heavily charged wires of defendant company lying in a public alley. In its essence the proof went no further than this. The defendant company showed that the wires were burned through, or their attachments burned down, through no fault of its own, by an accidental fire; that it received no notice, and, indeed, that there was no time between the falling of the wires and the accident in which it could have received notice so as to cut off the current. It made this proof full and complete by unimpeached witnesses and uncontradicted testimony. The verdict of the jury was for plaintiff. The supreme court was divided, not at all upon the question whether or not the defendant company had made full and complete defense. That was admitted; but upon the question whether or not the jury was bound to believe and decide in accordance with the evidence of the defense, a bare majority holding that the jury alone were triers of the fact, and that a court of appeals would

not reverse a case and override the verdict if the evidence proved unsatisfactory to the jury, however satisfactory it might be to the court, the minority of the court holding that such a rule gave juries uncontrolled liberty to disregard and reject evidence, which, under the circumstances, it was their duty to have accredited.

This was the principal point of controversy between the members of that court. In the prevailing opinion, it is true, language is used, upon which respondent here relies, which would make not only electric light companies, but every other person using a street, saving foot passengers, absolute insurers in case injury resulted to person or property. An instance of such a declaration is found in the following language: "It was a matter of the plainest duty for the defendant to see that the streets and alleys of the city, along which by permission it was suffered to place its overhead wires for its own private gain, were at all times maintained in the same condition as to safety from the danger of electricity as they were before its overhead use thereof was begun." Every added vehicle upon the street of a city increases the danger to pedestrians in the use of the street. Every street-car does the same. Every suspended sign has like effect. If it be true that in all these, and in the innumerable other instances which might be cited, the street must be as safe after as before the new use, then it must necessarily follow that the user becomes an absolute insurer. If that is what the supreme court of Missouri means, it must suffice to say that it stands alone in its opinion, without reason or authority in its support. (1 Thompson on Law of Negligence, sec. 802; 15 Cyc. 472.) If, however, the supreme court of Missouri meant but to declare that where the wires of an electric light company, heavily charged with electricity, are shown to be lying upon a *public street* and injury to a person lawfully upon the highway results from these wires, without negligence on his part, a presumption that the company is negligent thus arises and the burden is cast upon it to overcome this presumption, the principle of law thus declared is one over which there need be no discussion, for it is not pertinent or applicable to the present case. Here, no wires were upon the public street. They were upon private property and were cast to the ground by the burning of the building upon that property. In the absence of ordi-

nance or statute changing the common-law rule in this regard, a fireman entering a building under imperative public necessity is but a licensee, who assumes the risks as he finds them, and to whom the owner of the premises owes no special duty to maintain those premises in a safe condition. (*New Omaha etc. Light Co.* v. *Anderson*, 73 Neb. 84, [102 N. W. 89]; *Woodruff* v. *Bowen*, 136 Ind. 431, [34 N. E. 1113]; *Hamilton* v. *Minneapolis etc. Co.*, 78 Minn. 3, [79 Am. St. Rep. 350, 80 N. W. 693]; 21 Am. & Eng. Ency. of Law, 2d ed., 475.) We would not from this be understood as holding that in all cases where the owner is exonerated, an electric light or power company, using the building as a means of transmitting into or over it power in dangerous quantities, would also be exonerated. A broad distinction might often exist between the duty of the owner, who had no control over the dangerous current, and the responsibility of the company using the building for the transmission of the dangerous force, and whose duty therefore it was to control it in all proper ways. So, in the very case at bar, the owner, having perhaps little knowledge of the force, and less of methods of its control, might well be held non-liable where dereliction of duty might be charged against and consequent liability might be imposed upon the electric company, if, after knowledge of the dangerous condition, it failed promptly to remedy it. But, under the facts here stated, such knowledge was not brought home to it, and it was not chargeable with this knowledge as matter of law.

It should be repeated that in this case there is no question involved of deadly wires lying in a street, to the imminent danger of the traveling public. There is no question of faulty installation or operation. Moreover, the defendant, if chargeable with everything else, could not be charged with the maintenance of deadly wires, since, notwithstanding the fact that the current which they carried caused the death of Pennebaker, and in this sense they proved deadly, a defendant's conduct is to be judged by the ordinary knowledge of mankind, and it is in evidence that two hundred and sixty volts was the utmost which the wires could have carried, and that the shock of two hundred and sixty volts is not regarded as at all dangerous to human life. It is not shown, therefore, that the defendant in this case failed in any duty toward the

deceased which was imposed upon it by law. If it has not failed in such duty, it is not legally responsible for his death.

4. The court's ruling in rejecting offered evidence, of which appellant complains, was error. This evidence consisted of a report made by the city electrician of the city of Fresno to the board of trustees, showing that the water and light committee of the Fresno city council, "to which was referred the matter of having cut-off switches installed for controlling electric currents in case of fire, reported a meeting with the officers of the San Joaquin Power Company, at which they explained that every circuit in town could be controlled from the power house, and that they had made arrangements with the telephone company whereby the fire chief, or city electrician, by asking the chief operator of the telephone company for the power house, would be given the line immediately, and that the current could be shut off quicker and with a great deal more safety in any district of the city by an attendant at the station." This report was by the trustees of the city adopted and placed on file. It was offered to be shown that the city electrician had, upon occasions of fire when the exigencies of the case in his judgment called for it, requested the cutting off of a district, and the request had always been promptly complied with. And it was offered to be shown, moreover, that the company always maintained a competent man at its sub-station for the purpose of doing this very thing, and that on the occasion of this fire no request so to do had been made. In fact the electrician arrived at the fire, cut the wires himself, but, unfortunately, a few minutes after Pennebaker met his death. The evidence was rejected apparently upon the theory that it did not amount to a by-law or ordinance or regulation of the city, and so could not operate to change defendant's legal duty toward the deceased. In this view the court was clearly in error. If the converse of the proposition had been sought to be proved, namely, that with the existence of such an understanding the company had failed upon proper request to disconnect the wires, it would not be doubted that it would furnish strong evidence of the company's negligence. Here, if it be conceded that the understanding or arrangement or agreement or convention of the parties did not have the legal effect of a municipal by-law, it was competent nevertheless to show that it was an accepted

regulation by the municipal authorities of the duty of defendant in the matter of fires, that it was an agreement which had been put into force, and which had always been lived up to by the company. The evidence would certainly have a strong tendency to show that in this respect the company was not delinquent in the performance of its duty, and for this purpose and to this extent it should have been admitted and weighed.

These considerations cover all the matters called to the attention of the court, and for the reasons hereinbefore given the judgment and order appealed from are reversed and the cause remanded.

Lorigan, J., and Melvin, J., concurred.

Hearing in Bank denied.

Beatty, C. J., dissented from the order denying a hearing in Bank and filed the following opinion on December 17, 1910:—

BEATTY, C. J.—I dissent from the order denying a rehearing of this cause.

It is here decided, among other things, that the superior court erred in sustaining the objection to the defendant's offer to prove the adoption by the board of trustees of the city of Fresno of the following report of the city electrician:—

"To the Honorable, the Board of Trustees of the City of Fresno: Gentlemen—The undersigned, the city electrician of the city of Fresno, herewith submits for your consideration his report for the month of December 30, 1905, as follows, to wit:

"'On the 13th the water and light committee met representatives of the Power Company in my office to decide on some safe and practical method of handling dangerous wires at fires. It was agreed that by giving the right of way over all others to the telephone lines, to the city electrician and fire chief, that the current could be shut off quicker and with a great deal more safety in any district of the city, by the attendant at the station. As with switches, it would be necessary to pull at least two to kill the line, and it would be necessary to climb

the poles to do so. And besides, it is possible that the switch pole might be in range of the fire, in which case the switch would be useless.

"'Respectfully submitted,

"'C. T. MᶜSHERRY,

"'City Electrician.'"

If this report had been offered by the plaintiffs in support of their case I think it would have been harmful error to have excluded it, for it would have proved in their favor that the necessity of providing "some safe and practical method of handling" the wires of the defendant carrying dangerous voltage in case of fires had been recognized and considered both by the city authorities and by the defendant—that it had been agreed that a proper measure of precaution in such case would be the cutting off of the circuit (i. e. the district) affected and that the defendant's plan of cutting out the whole district at the sub-station had been adopted in preference to the alternative plan of providing local switches within the various districts. This, in connection with abundant evidence that the defendant's agent at the sub-station, knowing that a fire had started within five or six blocks of the station, and in a district to which its wires extended carrying a voltage which the event proved to have been deadly to a grown man in apparently sound health, had neglected for forty minutes after the alarm of fire to adopt the precaution suggested by defendant itself and claimed to be the safest and most practicable, would have made out a clear case of highly culpable negligence—unless the adoption of the electrician's report can be construed as a valid agreement exempting the defendant from any obligation to cut off the current from a circuit where a fire might be raging until its agent at the sub-station should be requested to do so by the city electrician or the chief of the fire department. This indeed seems to be the view of the court, and, as appears from the opinion, is the ground upon which the ruling of the superior court is condemned. It is from this view that I dissent. It is perhaps a just inference from the terms of the report that its author assumed it to be a part of the duty of himself and the fire chief to the public (but not to the defendant) to give prompt notice of the occurrence and locality of the fire to the persons in charge of the defendant's sub-station, but this did not exempt the defendant from the duty of acting

promptly upon the same notice coming from any other person or in any other form. That they had such notice, and neglected to act upon it with reasonable promptitude was in my opinion amply proved, and it was no error as to the defendant to exclude the electrician's report and proof of its adoption, since it had no tendency to prove that the neglect to shut off the current at the station was excused by the failure of the fire chief and electrician to make the request.

I do not think this court can on the evidence set aside the finding of the trial court as to contributory negligence.

As to the *status* of a fireman who enters a burning building in a city in the vicinity of other buildings for the purpose of extinguishing the fire or saving life or property it may be that the liability of the owner for any injury received by him while on the premises is no other or greater than it would be to a mere licensee, but the fireman is not there as a licensee of the owner; he is there in performance of his duty as a public servant under the authority and protection of regulations clearly within the police power of the state, and of superior force to the will of the owner of the premises; and he is entitled to the same indemnity for injuries caused by the culpable negligence of others as if he were on a public street.

As to the comparative harmlessness of less than five hundred volts *res ipsa loquitur*. Either these wires carried more than five hundred volts, or less than that voltage, though harmless to most men, is deadly to some—and those few are entitled to protection. And, finally, the argument based upon the serious dangers (of panic, etc.) involved in the cutting out of a circuit on an alarm of fire does not appear to consist very well with the choice of a plan of handling its dangerous wires suggested by the defendant itself and approved by the city trustees, which was nothing less than a means of transmitting prompt notice of the outbreak of a fire to the sub-station and the cutting out of the circuit.

Upon this view of the case the question presented by the appeal is not whether it can be held *as a matter of law* that it was culpable negligence on the part of the defendant to wait for official notice of the danger before adopting any precaution against it, but is on the other hand whether it can be held as a matter of law that under the facts disclosed by the evidence there was no culpable negligence. Negligence is a

question of fact and not of law except in those cases where
upon the facts found or proved there can be no reasonable
difference of opinion as to the absence of culpability. In this
case the judge of the trial court, performing the function of a
jury, has found that there was negligence. I do not think
that his conclusion was unreasonable. At least I think the
case is deserving of further consideration.