### BOWEN & SON v. IOWA PUBLIC SERVICE CO. et al.*

Circuit Court of Appeals, Eighth Circuit.
October 25, 1929.

No. 8534.

*Rehearing denied December 19, 1929.

Samuel Levin, of Chicago, Ill., and Alva B. Lovejoy, of Waterloo, Iowa (Frederick D. Silber, of Chicago, Ill., and Walter P. Jensen, of Waterloo, Iowa, on the brief), for appellant.

Alfred Longley, of Waterloo, Iowa (B. J. Price, of Ft. Dodge, Iowa, on the brief), for appellees.

Before STONE, Circuit Judge, and MUNGER and REEVES, District Judges.

MUNGER, District Judge. The appellant brought suit against the Central Iowa Power & Light Company, the Iowa Public Service Company, and the Citizens' Gas & Electric Company, seeking to recover damages for alleged negligence of the defendants. The Iowa Public Service Company and the Citizens' Gas & Electric Company answered to the plaintiff's petition, denying all its allegations of negligence, of injury, and of damages. An answer to the plaintiff's petition was filed by the Central Iowa Power & Light Company, but by leave of court this answer was withdrawn and a general demurrer to the petition was filed by the Central Iowa Power & Light Company. This demurrer was sustained by the court, an exception was taken, the plaintiff elected to stand upon its petition, an order of dismissal of the petition was entered, and the plaintiff has appealed. The only question to be considered is the sufficiency of the plaintiff's petition as against the demurrer of the Central Iowa Power & Light Company. The petition alleged that the plaintiff owned a factory building at Nashua, Iowa, and that on December 8, 1926, the defendant maintained and operated an electric transmission line consisting of poles and wires in close proximity to two sides of this building. These wires carried a current of electricity of 33,000 volts. The petition also alleged that a fire began in a corner of the building on that day. An alarm was given and the town fire department at once appeared with its fire fighting apparatus and was about to throw water through a hose upon the fire, and could have extinguished the fire at that time, but the town marshal by the order and direction of the local manager of the defendant's plant at Nashua, and of the engineer of this plant, ordered the members of the fire department not to turn on the water, because the wires were so close to the building that the electric current from them would cause the death of persons using the fire hose if a stream of water passed through it and reached the wires. Because of these instructions and because of the danger, the firemen failed to throw water upon the fire for 20 or 30 minutes, and until the current had been turned off from these wires. The result of this delay was the destruction of the building and of its contents by the fire. It is alleged that the defendant had no facilities in or near the town of Nashua for switching off the current of electricity in these wires and it became necessary to send a messenger by automobile to the town of Plainfield, eight miles away, in order to cut off the current. Some of plaintiff's specific allegations of negligence are as follows:

"Plaintiff alleges that the defendants were guilty of negligence, which was the proximate cause of plaintiff's loss and damages as follows:

"1. By maintaining its said wires and transmission line in such close proximity to plaintiff's building as to render it unsafe or impossible for the fire department of the town of Nashua to use safely the facilities at hand, as provided for that purpose, to extinguish the fire in said building.

"2. The defendants were negligent in that they maintained their transmission wires, charged with a dangerous current of electricity, in close proximity to plaintiff's buildings without installing or providing a switch, or switches, in the town of Nashua, or within

a reasonable distance so that in case of fire, the electricity could be eliminated from said wires, thereby rendering it possible to use water to extinguish a fire without danger to human life.

"3. The defendants were negligent in failing to have or maintain within a reasonable distance some facilities or means whereby the electric current might temporarily be diverted from the transmission wires near said building.

"4. The defendants were negligent in that they failed and neglected to turn the current of electricity from said wires as soon as they knew that said building was on fire, or within a reasonable time after such knowledge, or to use any diligence or care or make any effort so to do.

"5. The defendants negligently failed to have an employee at the office in Plainfield, or accessible by telephone at Plainfield, whose duty it was to turn off the switch and thus eliminate from the wires near plaintiff's building, as aforesaid, the dangerous current of electricity with which they were charged.

"6. The defendants were negligent in that their employee, or employees, at Plainfield, if any, were not on duty at the time of the fire to turn off the current from the wires in question in order to render them safe for the firemen to fight fire by the use of water in the usual way.

"7. That the defendants were negligent, as a matter of law, in that they violated Section 5 of ordinance No. 38 of the town of Nashua, which was in force and effect at the time of the fire; that said section 5 of the ordinance reads as follows:

" 'Sec. 5. In the erection and construction of any of the conductors, transmission lines or distributing systems of the Company shall not in any way interfere with the ordinary drainage of the city, with the sewers, underground pipes, conduits, or any other property of the Town of Nashua, private person, or corporations, when in existence.'

"That the defendants in violation of the above quoted section of said ordinance did construct its conductors and transmission lines or distributing system in such a way as to interfere with the property of private persons or corporations, and particularly the plaintiff company, and particularly so interfered in the construction of certain transmission lines in such close proximity to plaintiff's building as to interfere with the firemen and make it unsafe for them to properly fight the flames in case of fire, and in failing under those circumstances to have at hand, or within reasonable access, methods and means for turning out the said dangerous

current of electricity from its wires in the immediate vicinity of plaintiff's buildings so that the fire could be safely extinguished or controlled.

"8. That the dangerous current of electricity could have been turned out or switched from the said transmission line in the vicinity of plaintiff's said buildings and property by merely telephoning either to the town of Waverly or City of Charles City, where facilities had been and were then installed for that purpose; but that the defendants negligently failed to telephone to either of said points to order or request said dangerous current to be switched from said wires; and failed and neglected to do anything, or take any steps, or use any care or diligence in the premises.

"9. The defendants were guilty of negligence because in violation of section 8326 of the Iowa Code of 1927, they failed and neglected to install sufficient devices to automatically shut off electricity through said transmission lines wherever connection is made whereby current is transmitted from the wires of said transmission line to the ground."

In support of the ruling upon the demurrer, it is urged by the appellee that it was essential that the petition should show a legal duty owing by appellee to the plaintiff, and its violation, and that no such duty is alleged. This objection to paragraph 1 (as set forth above) is sound. No facts are alleged which show that there was a duty of the power company to maintain its wires at any particular distance from the appellant's building. In modern cities and towns the use of wires to convey currents of electricity along the streets and alleys and near to buildings used for trade and manufacture is quite usual, and the possibility of contact of water with these wires when water is used by fire departments in case of fires is often present. It would be almost impossible, unless the wires were buried in conduits, to place the wires in any position along the streets and alleys where streams of water from fire hose might not reach them, when those streams are used in the haste needed to cope with a conflagration. The petition does not disclose the distance from the building of the wires, of which complaint is made, nor the practicability of any different location, or any facts which show an improper placing of the wires.

The duty of companies who transmit powerful currents of electricity along wires, specially in cities and towns, to turn off the current when danger arises because of a fire in a building near the wires, does not seem to have been discussed in many cases. In

Pennebaker v. San Joaquin Light & Power Co., 158 Cal. 579, 112 P. 459, 461, 31 L. R. A. (N. S.) 1099, 139 Am. St. Rep. 202, in holding that there was no duty to a fireman to cut off the power supplying lights to a city district, because of notice that a fire had broken out in the district, the court said:

"In support of the first contention, no authority is cited, nor do we think any can be. It would compel defendant, upon the one hand, to extinguish all light and power in a district, regardless of the necessity of so doing, or be held liable for any consequences that might follow its failure. It takes no account of the fact that by so doing, in the case of a night fire, a district would be left in complete darkness, and that under such circumstances, following the alarm of fire, panic might ensue in hotels, lodging houses, and residences, and that the resulting damage might far exceed that which the extinguishment of the lights was designed to prevent. No such rule of law exists, nor, we take it, will ever exist, and the utmost that will be exacted of lighting companies in this regard is that they shall hold themselves in readiness to cut off the electricity when the necessity arises and they are informed of it by proper authority."

In Osborne v. Tennessee Electric Power Co. (Tenn.) 12 S.W.(2d) 947, 949, the electric power company received notice that a building was on fire near to one of the high voltage wires, endangering it, and the fire caused the wire to burn in two, and to fall and to cause the death of a fireman. The court approved of a rule as follows:

" 'Undoubtedly if timely informed of the character of the menace which their wires had become they owed the deceased that degree of care that any ordinarily prudent man would have used under the circumstances to relieve the situation of the particular peril of the wires, and that care, whether it was to turn off the current, or to send men two miles to cut the wires, or to take less efficient means, was commensurate with the danger to be avoided, and the deceased himself was obligated to use all means that an ordinarily prudent man would have used under the circumstances to look out for his own safety. These are the principles under which this case should be tried, and under which the proof must be measured.' * * *

"While we do not undertake to announce any hard and fast rule, since each case must depend upon its own facts, we are inclined to agree with the Court of Appeals that the plaintiff presented such facts as entitled her to have the jury say whether a reasonably

prudent person would have shut off the current in such circumstances. We do not mean to say that in every instance the defendant should cut off its current upon being advised that its line is endangered. The character of the notice received, the nature of the threatened danger, the situation of the informant, his appearance and position, and other circumstances, are to be considered in deciding whether it is prudent and proper to cut off the current.

"It is also proper for the jury to take into consideration the means and methods by which the current is shut off, the necessary time it takes, and the territory and electrically run plants that would be affected thereby.

"Where the servant in charge of the trouble department is informed of a dangerous situation, he should interrogate his informant, ascertain who he is, obtain from him the facts, and, if such a situation is presented as that a reasonably prudent man would shut off the current, it would be his duty to order it shut off, and if he fails or refuses to do so he would be guilty of negligence which would be imputed to his master.

"It is a serious matter to shut off the lights of a city and close down the electrically run plants. On the other hand, the deprivation of lights in a few houses for a short time would work but little inconvenience."

Under some circumstances there may be a duty of such companies to cut off the current until the danger is removed upon receiving notice that a wire, carrying a dangerous current of electricity, is down in a public street or alley. Lutolf v. United Electric Light Co., 184 Mass. 53, 67 N. E. 1025; Lexington Utilities Co. v. Parker's Adm'r, 166 Ky. 81, 178 S. W. 1173; Mayor, etc., of City of Madison v. Thomas, 130 Ga. 153, 60 S. E. 461; 20 Corp. Jur. 357. We think that there is an implied duty of an electrical company, which carries on overhead wires a voltage known to be dangerous to any one coming in contact with its wires, and which maintains such wires in a city or town and near to buildings used for business or residence, to anticipate that fires may occur in such buildings, and that it owes a duty to the owner of such a building to provide and use reasonable means whereby the electrical current may be cut off, after due notice is given to it that there is a danger from the wires to firemen who are seeking to extinguish the fire, when the cutting off of the current would be consistent with the practical operation of its business. Regard must be had for other users of light or power from the wires, and for the company's general right to furnish a

supply of current for their use. If this were not the rule, the extinction of a fire by the usual means might be prevented by the arbitrary refusal of an electrical company to remove the danger.

The plaintiff's petition alleges in effect that it was practicable for the appellee to have turned off the current as soon as it knew that the building was on fire, but that it negligently failed to do so for an unreasonable length of time after such knowledge. The allegation of this negligence in general terms was sufficient. Gulf, C. & S. F. R. Co. v. Washington (C. C. A.) 49 F. 347; Kaemmerling v. Athletic Mining & Smelting Co. (C. C. A.) 2 F.(2d) 574; Geneva Mill Co. v. Andrews (C. C. A.) 11 F.(2d) 924; Gordon v. Chicago, R. I. & P. Ry. Co., 129 Iowa, 747, 106 N. W. 177; Hanen v. Lenander, 178 Iowa, 569, 160 N. W. 18.

That the failure to turn off its current may have been the proximate cause of loss by continuance of the fire is established in principle by many cases, wherein it has been held that the negligent prevention of the use of available fire apparatus may be the proximate cause of a loss by fire. Metallic Compression Casting Co. v. Fitchburg Ry. Co., 109 Mass. 277, 12 Am. Rep. 689; White v. Colorado Cent. R. Co., 5 Dill. 428, Fed. Cas. No. 17,543; Hardman v. Montana Union Ry. Co. (C. C. A.) 83 F. 88, 39 L. R. A. 300; Crissey & Fowler Lumber Co. v. Denver & R. G. R. Co., 17 Colo. App. 275, 68 P. 670; Little Rock Traction & Electric Co. v. McCaskill, 75 Ark. 133, 86 S. W. 997, 70 L. R. A. 680, 112 Am. St. Rep. 48. See, also, Milwaukee & St. P. Railway Co. v. Kellogg, 94 U. S. 469, 24 L. Ed. 256.

No cause of action was stated in the allegations of a violation of the town ordinance of Nashua, nor of section 8326 of the Iowa Code of 1927.

The construction of appellees' lines so near the appellant's building as to make it dangerous to throw water upon the building through a fire hose was not an interference with appellant's property then existing. The later interference was with the use of the fire hose, but not with the use of appellant's building. There seems to be no serious contention that there was any violation of section 8327 of the Iowa Code. There is no allegation that a connection was made whereby current was transmitted from the wires to the ground.

For the reasons indicated, the judgment will be reversed, with directions to overrule the demurrer.