## BOWEN & SON v. IOWA PUBLIC SERVICE CO. et al.

### No. 9223.

Circuit Court of Appeals, Eighth Circuit.

Feb. 9, 1932.

See, also, 35 F.(2d) 616.

Herbert W. Hirsh, of Chicago, Ill. (Frederick D. Silber and Samuel Levin, both of Chicago, Ill., and William A. Smith and Frank A. O'Connor, both of Dubuque, Iowa, on the brief), for appellants.

Alfred Longley, of Waterloo, Iowa (B. J. Price, of Fort Dodge, Iowa, on the brief), for appellees.

Before VAN VALKENBURGH, BOOTH, and GARDNER, Circuit Judges.

VAN VALKENBURGH, Circuit Judge.

Appellants were the owners of a textile factory at Nashua, Iowa, known as the Nashua Woolen Mills. December 6, 1926, a fire broke out in the "picking room" of this factory. The volunteer fire department responded to the alarm with a hose cart and about one thousand feet of hose. A part of the fire department's equipment, consisting of a hose wagon and chemical apparatus, was in attendance upon a fire in the country, and not available. The hose from the cart was coupled up and attached to the hydrant ready for use, but the water was not turned on for a period, as stated by one of the appellants, of about fifteen minutes thereafter. Meantime the fire had gained increased headway, with the result that, ultimately, the buildings were totally destroyed.

Appellee Central Light & Power Company, at the time of the fire, owned and operated an electric transmission line, with high-tension wires, carrying a current of 33,000 volts. These wires, strung on poles about thirty-three feet above the ground, ran along the north and east sides of appellants' building, and in rather close proximity thereto. Appellee Iowa Public Service Company, through purchase of all its property, is the successor to the Central Light & Power Company. The reason that the water was not turned on promptly was because the firemen, and those having authority over them, feared the effect upon those operating the hose, should the stream of water come in contact with the high-tension wires in close proximity to the burning building. They had been warned that the electric current from said wires might and would be conducted through the stream of water, thereby endangering the lives of firemen holding and manipulating the fire hose. The turning on of the water, therefore, was delayed until the current running through these wires was cut off.

Appellants brought suit against appellees to recover their damages sustained in this fire, alleging, as negligence, that the officers, agents, and employees of the defendant Central Light & Power Company, knowing this danger, had ordered the members of the fire department not to turn on the water for the purpose of stopping the fire. Further negligence was alleged as follows:

"1. By maintaining its said wires and transmission line in such close proximity to plaintiff's building as to render it unsafe or impossible for the fire department of the town of Nashua to use safely the facilities at hand, as provided for that purpose, to extinguish the fire in said building.

"2. The defendants were negligent in that they maintained their transmission wires, charged with a dangerous current of electricity, in close proximity to plaintiff's buildings without installing or providing a switch, or switches, in the town of Nashua, or within a reasonable distance so that in case of fire, the electricity could be eliminated from said wires, thereby rendering it possible to use water to extinguish a fire without danger to human life.

"3. The defendants were negligent in failing to have or maintain within a reasonable distance some facilities or means whereby the electric current might temporarily be diverted from the transmission wires near said building.

"4. The defendants were negligent in that they failed and neglected to turn the current of electricity from said wires as soon as they knew that said building was on fire, or within a reasonable time after such knowledge, or to

use any diligence or care or make any effort so to do.

"5. The defendants negligently failed to have an employee at the office in Plainfield, or accessible by telephone at Plainfield whose duty it was to turn off the switch and thus eliminate from the wires near plaintiff's building, as aforesaid, the dangerous current of electricity with which they were charged."

Additional specifications of negligence involving section 5 of Ordinance No. 38 of the town of Nashua, and section 8326 of the Iowa Code of 1927, have hitherto been rejected by this court.

To the petition a demurrer was interposed and sustained. Appellants elected to stand upon their petition, which, accordingly, was dismissed. Upon appeal to this court, this judgment of dismissal was reversed, and the cause was remanded to the District Court with directions to overrule the demurrer. 35 F.(2d) 616, 619. In the course of its opinion this court said: "We think that there is an implied duty of an electrical company, which carries on overhead wires a voltage known to be dangerous to any one coming in contact with its wires, and which maintains such wires in a city or town and near to buildings used for business or residence, to anticipate that fires may occur in such buildings, and that it owes a duty to the owner of such a building to provide and use reasonable means whereby the electrical current may be cut off, after due notice is given to it that there is a danger from the wires to the firemen who are seeking to extinguish the fire, when the cutting off of the current would be consistent with the practical operation of its business."

Upon return of the case to the docket of the District Court, answers were filed and trial proceeded upon the issues framed. It resulted in a verdict for appellees.

The specifications of error set out in the brief have to do entirely with the action of the court in sustaining objections to questions of counsel for appellants designed to show that one Lindquist, an employee of the Iowa Public Service Company, ordered the firemen not to turn on the water while the high voltage current was passing over the wires. and that he had authority to bind his company in so doing. Specifications Nos. 2 and 6 sufficiently disclose the trend of the excluded testimony:

"No. 2. The court erred in sustaining the objection of the defendant to the following question propounded to the witness, W. J. Bowen: 'What did he say?' (Referring to

conversation with Lindquist; Rec. 90.) Thereupon the plaintiff offered to prove that during the progress of the fire, he, Bowen, had a conversation with Mr. Lindquist, the local manager of the defendant companies, in which Bowen asked him, 'Are you going to let my buildings burn down? Why don't you turn on the water?', and to which Mr. Lindquist replied that it was impossible to do that until the high line was cut off; that it was better to burn buildings than to kill the men."

"No. 6. The court erred in sustaining the motion of counsel for the defendants to strike out the following answer made by the witness Henry Noble to the following question, viz:

"Q. What did he say, if anything, about the current in the wires? A. He had warned us before never to turn the water on from the hydrant until the high line was cut."

The nature of Lindquist's employment is thus fully stated in his testimony:

"My name is J. P. Lindquist. I live in Nashua, Iowa, and am the local manager of the Iowa Public Service Company. I have been for about fifteen years. My duties as local manager at Nashua are anything connected with line trouble, or trouble of any kind. I have general charge and control. It is part of my duty to receive and give orders with respect to the operation of the line and the use of it.

"Cross-Examination.

"The so-called high tension lines run from Waterloo to Charles City, and carry a supply of voltage which is taken off at various points along the line. I had the superintendence over both the high tension lines and the local lines pertaining to the use of electricity by local people. I didn't put up the high tension lines or decide when they should be taken down, or where they should go. They were operated entirely by the general office. With respect to these high lines, I repaired any minor trouble between Nashua and Sumner. My duty was only to see in a minor way that they were repaired where there was trouble. I didn't decide where they should go or how much current should go over them, or how they should be constructed. The only thing I had to do with high lines was to repair them when they got out of order, or to see that someone else repaired them."

He testifies further that his immediate superior officer was a Mr. Baxter of Charles City, Iowa, and that he did not receive any instructions from any of his superiors with respect to the protection of life and property in connection with the high lines and generating plant.

The points relied upon in brief and argument are the following:

"I. An agent is competent to testify upon the question of his agency or authority.

"II. The court erred in excluding the testimony offered to show that defendants' agent, Lindquist, directed the Nashua Fire Department not to turn on the water until the current had been cut from the high lines.

"A. The directions given by defendants' agent, Lindquist, were within the scope of his implied authority, and therefore admissible in evidence against the defendants.

"B. Where an extraordinary emergency arises, the agent on the scene, highest in authority, is justified in assuming extraordinary powers, and his principal will be bound by the action taken by him in the emergency.

"C. The directions given by Lindquist that water should not be turned on until the current in the high line had been cut were admissible in evidence as part of the res gestae."

The testimony of Lindquist above quoted very clearly sets forth the nature of his employment and the extent of his authority so far as he could state it, and so far as it could be material. However, it was in evidence, without objection, that Lindquist said it was dangerous to turn water on the wires while the current was on. He had given this warning before this occasion. Worden, the hydrant man, in stating the reason why the water was not turned on at once, said: "Mr. Noble (City Marshal and Water Superintendent) said it would injure the lives of the men from the high lines."

Appellants in their petition pleaded that "it was exceedingly dangerous for the firemen to turn a stream of water, or any water, on the flames because the electric current from said wires would or might be conducted through the stream of water and hose to the persons of the members of the fire department operating same." Lindquist had, theretofore, given warning to this effect, and, with the information at hand, he would have been remiss in his duty as a citizen had he not done so. There is no evidence that he had any authority over the firemen or their volunteer officers. The latter acted out of regard for their own personal safety. No liability could attach to appellees upon any ground stated in the specifications of error assigned and urged.

Our decision might well end here. The only ground for recovery was, as stated by this court in its previous opinion, the failure to "provide and use reasonable means whereby the electrical current may be cut off after due notice is given to it (the electrical company) that there is a danger from the wires to firemen who are seeking to extinguish the fire, when the cutting off of the current would be consistent with the practical operation of its business."

It is pointed out that, in modern cities and towns, the use of wires to convey currents of electricity along the streets and alleys, and near to buildings used for trade and manufacture, is not only usual, but a matter of practical necessity. The petition does not disclose any facts which show an improper placing of the wires. Lindquist testifies, and there is no testimony to the contrary, that some of the power generated in the plant at Nashua was transmitted to and passed through the high lines that went through the Bowen property. Other power was generated at Waterloo. The current was transmitted from the plant at Nashua south to Plainfield, and as far as Waterloo, and was also transmitted north. In December, 1926, there was a cut off at Nashua; but to get the current out of the high lines it was necessary to cut the power at two points. The second point was at Plainfield, distant seven miles. A man was sent at once, by automobile, to Plainfield to cut off the power. This was accomplished, the power was off the wires, and the water turned on in fifteen minutes from the time it was called for, according to Thomas J. Bowen, one of the appellants. The crucial question, then, was whether appellees had acted with reasonable diligence, and with the care and prudence demanded in the premises. This was submitted to the jury in a carefully considered charge to which appellants preserved no exception. No action was taken by them which challenges the sufficiency of the evidence to support the verdict and judgment, either in the trial court or in this court.

From the foregoing it follows that the judgment must be affirmed, and it is so ordered.