[Civ. No. 5630. Third Appellate District.—December 5, 1936.]

FRANK J. O'SHEA, Respondent, v. PACIFIC GAS & ELECTRIC COMPANY (a Corporation), Appellant.

Thos. J. Straub, Clinton F. Stanley and W. H. Spaulding for Appellant.

George R. Freeman and Elmer Laine for Respondent.

THOMPSON, J.—The defendant has appealed from a judgment of $6,000 which was rendered in favor of the plaintiff for injuries received as the result of a fall from a ladder caused by coming in contact with highly charged electric wires which, at the request of defendant's foreman, he attempted to cut after having been assured they were dead wires.

The defendant owns and operates an electric power and lighting system in Willows and other California communities. Among the properties which it owns at Willows is an electric substation building. Several years prior to the commencement of this action an electric fire-alarm bell was attached to the front of this building. It was installed in a metal box which was fastened to the outer wall above the door about twelve feet from the ground. The bell belonged to the city of Willows. It had not been used for several years. The plaintiff, Frank J. O'Shea, was chief of the fire department. Frank Loder was defendant's foreman and superintendent in charge of the substation. The plaintiff telephoned to Loder several days prior to the time of the accident requesting him to return the bell for the reason that the city wished to install it at the fire department house. Loder told him he would detach the bell and bring it to him. He failed to do so.

November 6, 1933, the plaintiff called at the substation and found Loder working at a bench. It does not appear there was any other person present. Seeing O'Shea, Mr. Loder remarked: "I suppose you are after that bell?" to which the plaintiff replied, "Yes, if I could get it." Loder procured a screwdriver, a pair of pliers, a wrench and a ladder. Placing the ladder against the building, he climbed up to the metal box containing the bell, and disconnected two wires. He then discovered it would be necessary to remove the entire box to secure the bell. The box was fastened to the corrugated-iron side of the building by means of three bolts which passed through the wall. The nuts which

secured the bolts were on the inside of the building. Loder descended from the ladder, handed O'Shea the screwdriver and the pliers and told him to climb the ladder and loosen the bolts and that he would go inside the building and secure the nuts. The plaintiff followed his instructions and removed the bolts. It was then discovered the box still could not be removed for the reason that there were two other wires which held it in place. O'Shea called to Loder, saying, "There are a couple of wires up here yet." Loder replied, "Yes, doggone those wires, I never did trace them out to see where they went; *they are dead though.* There has been no juice in them, they have been dead for eight years or ten years, will you cut them while you are up there?" O'Shea proceeded to do so. When he applied the pliers to the live wires he received a charge of electricity which prevented him from releasing his hold. He shouted for help. Loder ran to his assistance, and climbing the ladder he finally succeeded in breaking the plaintiff's hold. The ladder toppled over and both men fell to the cement walk. O'Shea's spine was fractured in the fall, and he sustained serious, permanent injuries as a result thereof. This suit for damages was brought. The cause was tried with a jury. From the judgment which was rendered pursuant to the verdict returned by the jury this appeal was perfected.

The appellant contends that the verdict and judgment are not supported by the evidence for the reason that it appears the removal of the fire-alarm bell was not within the scope of the duties of Loder as an employee of the defendant and that his instructions to O'Shea with relation thereto could therefore not bind his employer. It is also asserted the court erred in giving to the jury certain instructions. The plaintiff was seriously injured. It is conceded the amount of the judgment is not excessive.

We are of the opinion the removal of the alarm bell from the defendant's substation building was within the scope of the duties of its foreman and superintendent of that plant, and that the defendant is therefore liable for injuries sustained by O'Shea as a result of the negligence of Loder in directing the fire chief to cut the wires which he erroneously informed the chief were dead and had not been charged with electricity for years.

There is substantial evidence that the bell belongs to the city of Willows. It was installed by the defendant and operated on its building for several years. After its use was discontinued the fire chief requested the return of the bell so that it could be used on a fire department house. The defendant's foreman agreed to return the bell, but failed to do so. It was the duty of the defendant to disconnect the bell from the power-plant building so that the city could obtain possession of its own property. The fire chief called for the bell, and the foreman and superintendent of the plant proceeded to disconnect the apparatus. He requested the chief to assist him in doing so and directed him to sever the wires, stating that they were dead and carried no load of electricity. In obeying the instructions of the foreman the plaintiff received a shock of electricity which was the proximate cause of his fall from the ladder and of the injuries which were received as a result thereof. The chief had no knowledge that the wires were charged with electricity or that they were dangerous. He was misled by the foreman's assurance that they were dead and that they were therefore not dangerous.

There is a serious controversy regarding the question as to whether Frank Loder was acting as foreman and superintendent of the substation where the alarm bell was installed at the time of the accident, and as to whether he was authorized by the defendant to remove the bell. The pleadings admit that he was then the foreman and superintendent of that plant. The complaint alleges that:

"At all times herein mentioned Frank Loder was plant foreman and superintendent of defendant's yard and electrical sub-station at Willows, Glenn County, California, and in the performances of the acts herein alleged was acting as such plant foreman and superintendent."

That allegation of the complaint was admitted by failure on the part of the defendant to deny it. (Sec. 462, Code Civ. Proc.; *Welch* v. *Alcott*, 185 Cal. 731, 754 [198 Pac. 626]; 2 Cal. Jur. 234, sec. 67.) Moreover, Mr. Loder testified in that regard: "Q. In the pleadings there is an allegation that you were superintendent and plant manager at the sub-station? . . . A. Yes."

Mr. Hogle, attorney for the defendant, admitted at the trial that Frank Loder was acting as superintendent of that

substation. He said: "Mr. Loder is a servant and employee of the Pacific Gas and Electric Company, but we deny that he has any capacity *other than superintendent possibly of this isolated local unit.*"

The foregoing record furnishes ample evidence upon which the jury was warranted in finding that Loder was the foreman and superintendent of the substation with authority to disconnect and remove therefrom the fire-alarm bell belonging to the city of Willows.

Under the circumstances of this case it was the province of the jury to determine whether the removal of the fire-alarm bell from the defendant's building was within the scope of the employment of the foreman and superintendent of that substation. (18 R. C. L., p. 796, sec. 254.) There is sufficient evidence to warrant the jury in finding that Frank Loder had charge and supervision of the defendant's substation; that the alarm bell, belonging to the city of Willows, was attached to that building; that the bell was no longer in use in the place where it was located; that the city authorities desired the return of their bell for use elsewhere and that it was the duty of the foreman of that building to detach the bell and return it to the fire chief, who was the agent of the city of Willows. ▉ It was in furtherance of that duty in behalf of the defendant that Loder directed the plaintiff to assist him in disconnecting the bell. Loder's negligence in directing O'Shea to cut the live electric wires connecting the bell with the substation building over which he had charge, assuring him the wires were dead, and that they were not charged with electricity, renders the defendant liable for the injuries sustained by the plaintiff as a result of obeying such instructions. (*Callahan* v. *Harm*, 98 Cal. App. 568 [277 Pac. 529].) ▉ It is not necessary that the master shall specifically authorize the particular act of the servant which is charged as negligence, to render him liable therefor. That authority may be merely incidental to, and in furtherance of the work for which he is employed, and therefore the authority may be implied. It is frequently difficult to determine just what acts of a servant are within the scope of his employment. The determination of that relationship often depends upon the circumstances of a particular case. The master may be liable for the tort of a servant even though the act may not have been

dircctly authorized. (*Ruppe* v. *City of Los Angeles,* 186 Cal. 400 [199 Pac. 496]; *Kish* v. *California State Automobile Assn.,* 190 Cal. 246 [212 Pac. 27]; 39 C. J. 1283, sec. 1472; 16 Cal. Jur. 1104, sec. 63; 18 R. C. L., pp. 793–796, secs. 253, 254.) In the authority last cited it is said in that regard:

"The test now universally accepted is whether there was express or implied authority for doing the act relied upon, . . . or, in the customary legal phrase, whether the act was done 'within the scope of the employment'. . . .

"Acts impliedly authorized or such as are within the scope of employment—that is, wrongs for which the employer may be held accountable—are not susceptible of precise or even very helpful definition by any phrase or short form of expression. Each case must be determined with a view to the surrounding facts and circumstances— the character of the employment and the nature of the wrongful act. Whether the act was or was not such as to be within the employment's scope is ordinarily one of fact for the jury's determination."

 It may not be said the plaintiff was a mere trespasser on defendant's premises or a volunteer in the performance of his aid to the foreman at the time of the accident, and that the company was therefore not liable for injuries received as a result of its foreman's negligence. The fire chief went there as the agent of the city of Willows to procure the alarm bell which belongs to that city. It was the duty of the substation foreman and superintendent to disconnect the bell and deliver it to the agent of the city. These men were engaged in that task when the plaintiff was injured. He was assisting the foreman in the performance of his duty, at his specific request. Assuming that the plaintiff was a mere licensee on the defendant's premises, that fact does not preclude him from recovering damages for the negligence of defendant's employee. The principle which renders the master liable for the conduct of his servant resulting in injury to a third person, under circumstances similar to those of the present case, is concisely stated in a note involving the subject of liability of a master for the torts of his servant performed in the course of his employment, in 43 L. R. A. (N. S.), page 190, as follows:

"One who, in furtherance of his own interests or those of his master, assists the servants of another in the performance of their work, is neither a fellow servant of such servant nor a mere volunteer, but occupies a third position, namely, that of a licensee with an interest. He is not a trespasser, because he is lawfully in the place; he is not a fellow servant, because he is not directly or indirectly retained or employed by the master; and he is not a bare volunteer, because he does the work to further his own interests or those of his master. When a person thus situated is injured through the negligence of the servant whom he assists, the doctrine of *respondeat superior* applies, and the master of the negligent servant is responsible for the injury.

"The principle upon which a recovery is based is this: The plaintiff is regarded, not as a volunteer, but as having been engaged at the request or with the permission of the defendant or his servant, in a transaction of interest as well to himself or his master as to the person for whom he acts; and this entitles him to the same protection against the negligence of the defendant's servant as if he were at the time attending to his own private affairs. Though performing a service beneficial to both, he is doing so in his own behalf, and not as a servant of the defendant. The request or acquiescence of the latter gives him the right to perform the service, and the fact that he acts in his own behalf, however beneficial his labor may be to the defendant, gives the plaintiff the right to be protected against the negligence of the company's servant."

Regarding the same subject it is said in *Welch* v. *Maine Central Ry. Co.,* 86 Me. 552 [30 Atl. 116, 25 L. R. A. 658, 660]:

"It is undoubtedly true that, if one who has no interest in the work to be performed, a mere bystander, voluntarily assists the servants of another, either with or without the latter's request, he must do so at his own risk; . . . But it is equally well settled that one who has an interest in the work to be performed, and for his own convenience, or to facilitate or expedite his own work, assists the servants of another, at their request or with their consent, is not thereby deprived of his right to be protected against the carelessness of the other's servants. In the former class of

cases the master will not be responsible; in the latter, he will be. This distinction is sustained by every text-book to which our attention has been called.''

■ The court did not err in giving the jury the following instructions:

''A corporation is an artificial creature, or creature of the law and must act through its agents, servants and employees. The negligence of an employee of a corporation *acting in the discharge of his duties and within the scope of his authority*, express or implied, is under the law the negligence of the corporation.''

''You are instructed that the Pacific Gas and Electric Company in this case is a corporation, and like all other corporations, must act through its officers, agents or employees. Consequently, if you find from the evidence that the damage to plaintiff described in the complaint resulted in whole or in part from negligence of an agent or employee of the defendant Pacific Gas and Electric Company *while in the performance of his duties,* and when plaintiff was exercising due care, your verdict should be for the plaintiff.''

The preceding instructions are correct declarations of law, containing all of the required elements affecting the principles announced. They are not formula instructions. Each of them properly informs the jury that they must find that the negligence of the servant of defendant complained of occurred in the performance of his duty, either express or implied. The jury was elsewhere repeatedly instructed that if they found the plaintiff was a mere invitee on the premises of the defendant at the time of the accident, he assumed the risk of existing defective or dangerous conditions, and that it was then necessary for the plaintiff to prove he was injured because of active and overt negligent acts of the servant of defendant, to entitle him to recover damages. Moreover, the term ''invitee'' was clearly and correctly defined, and the distinction between an invitee and a mere volunteer in the performance of services was also explained. The jury was fully and fairly instructed upon all necessary elements of law which are involved in this case. They could not possibly have been misled by the preceding instructions.

It follows that the court properly denied defendant's motion for judgment notwithstanding the verdict, and its motion for a new trial.

The judgment is affirmed.

Plummer, J., and Pullen, P. J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on January 4, 1937, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on February 1, 1937.