[Civ. No. 10979.   First Appellate District, Division Two.—September 1, 1939.]

ARTHUR RODDY, Plaintiff and Respondent; THE PEOPLE EX REL. STATE DEPARTMENT OF PUBLIC WORKS, ETC., Intervener and Respondent, v. AMERICAN SMELTING AND REFINING COMPANY (a Corporation) et al., Appellants.

J. Hampton Hoge and A. Dal Thomson for Appellants.

H. Raymond Hall for Respondents.

STURTEVANT, J.—The plaintiff, an employee on the San Francisco-Oakland Bay Bridge, while engaged as a flagman, at about 7:45 A. M. on the 11th day of October, 1936, was directing traffic on the eastern end of said bridge. The officers in charge of the bridge were commencing to paint the ceiling of the lower deck of the bridge. For that purpose they were using a movable gantry. From time to time the gantry was moved and in moving it it became necessary to protect the employees from being injured by passing traffic. Flagmen were stationed on each side and the plaintiff was stationed on the eastern side. A passenger bus operated by the Key System and driven by R. J. Brown, approached from

the east and stopped. Almost immediately thereafter a truck operated by the American Smelting and Refining Company and driven by Andrew J. McQueen, also approached from the east behind the bus. The bus having come to a stop the truck swerved to the right, passed the bus, and collided with the plaintiff. To recover damages for the injuries sustained the plaintiff commenced this action against both corporations and both drivers. The jury returned a verdict in favor of the plaintiff against the American Smelting and Refining Company and its driver. From the judgment entered on that verdict those two defendants have appealed.

When the passenger bus was first signaled it did not stop. The plaintiff blew his whistle and at the same time again signaled with his red lantern. The bus then stopped in its tracks. The evidence is somewhat conflicting but there was testimony that the bus at that time was on the south side of the traffic lane. The appellants asked the trial court to give an instruction which contained a passage " . . . I instruct you that it was the duty of the said Key System bus driver in bringing said bus to a stop, to stop said bus in such a place so as to allow not less than fifteen feet of the width of the paved or improved or main traveled portion of the highway opposite such stopped vehicle in order to leave a clear and unobstructed portion of the highway for the free passage of other vehicles. . . . " They also asked an instruction that contained a passage " . . . Then I instruct you that it was the duty of said bus operator to stop said bus off of the main traveled or improved portion of the highway. . . . " The trial court refused to give either of those instructions. The appellants contend said instructions were clearly sound statements of the law. (Vehicle Code, secs. 582 and 583.) As addressed to voluntary acts of drivers, the instructions would have been applicable. But when, as here, drivers are signaled by traffic officers they are bound to follow the orders. If the plaintiff in giving directions wanted the vehicle parked to the right or to the left, doubtless he could and would have given that direction. However, there is no conflict in the record and the direction given to the bus driver was to stop. He obeyed that direction. The trial court did not err in refusing to give the two instructions which the appellants had asked.

■ The appellants contend that the plaintiff's counsel was guilty of misconduct while arguing at the close of the trial. The record does not contain anything purporting to be a transcript of the reporter's notes of the arguments. However, in presenting their motion for a new trial the appellants offered in evidence the affidavit of their attorney as to what occurred when the arguments were made. Opposing that affidavit the plaintiff offered the affidavit of his attorney as to what occurred. The affidavits are distinctly conflicting. Furthermore, the trial court heard the arguments and it also read the affidavits. It denied the motion for a new trial. In effect that order was an implied finding against the appellants on the facts. On the record as made we are unable to state that the plaintiff's attorney was guilty of the misconduct charged against him.

■ Among others the trial court gave the following instructions, which followed consecutively. (Numbering ours.)

"(1) One who voluntarily places himself in a position of danger, assumes the risk ordinarily incident to such a position, and must exercise an amount of care commensurate with the additional danger.

"(2) One who places himself upon that paved and main traveled portion of the highway used by motor vehicles, must exercise the care of an ordinarily prudent person similarly situated, for his own protection and to that extent he must be vigilant and alert so as not to place himself in a position of obvious danger. In this regard I instruct you that one cannot excuse himself from a charge of negligence by showing merely that he assumed that he would not be struck by a motor vehicle, if to a person of ordinary care and prudence acting under like circumstances, the position appeared to be one of peril, and a situation which would necessitate the person changing his position to one of safety.

"(3) A person must exercise his senses of hearing and seeing and take ordinary precautions for his personal safety and protection but the jury should take into account that plaintiff Arthur Roddy in his capacity as a flagman on the highway at the time in question had duties to perform there other than looking after his own personal safety and that he had the right to expect that those traveling upon said highway would take into consideration that he had duties to perform and responsibilities not only to the highway employees

then engaged on said highway but also to the occupants of the vehicles traversing said highway and that he could not look after himself as would one who did not have any such duties or responsibilities.'' The appellants contend that the instruction which we have numbered three was to the effect that the plaintiff's engrossment in other tasks would excuse his contributory negligence. That contention is too broad. From the face of the instruction we think it is a fair statement of the law. However, when read in connection with the two instructions that immediately preceded it we think it is clear that the jury was properly instructed.

■ The record is not altogether clear but there was evidence that the plaintiff at the time he was hit was standing at a point approximately in the middle of the north lane of traffic. The appellants contend that he was guilty of contributory negligence as a matter of law. Considering the fact that he was engaged as a flagman directing traffic, it may not be said that he was guilty of contributory negligence as a matter of law. The question as to whether he was guilty of contributory negligence as a matter of fact was presented to the jury and the jury made its implied finding in his favor.

■ The last point made by the appellants is that the verdict is highly excessive in amount. The amount of the verdict was $9,000. At the time of the accident the plaintiff was about fifty-five years of age, in the best of good health, and unusually active. When he was struck he was knocked a distance between twenty-four and forty feet. He was unconscious for many hours. He was badly bruised about his head, face and hands, and his nose and eyes were black. A laceration over one eye required three sutures. The left femur above the knee had a transverse fracture with an over-riding of about two inches. The fracture was such that the upper portion plowed through the muscles. He was placed in a splint, later in a cast, and still later he was put in traction. He remained in traction for over two months. He was confined to the hospital for fourteen weeks. He was then taken to his residence where he was five months in a slow convalescent condition. He was allowed to return to work June 13, 1938. He was then fifteen to twenty per cent less than normal. His doctor testified his disability was permanent and that he will never be able to do the type of work he had been doing prior to the accident. His special dam-

ages exceeded $2,000. Considering all of these circumstances it may not be said that the verdict was excessive.

The judgment appealed from is affirmed.

Nourse, P. J., and Spence, J., concurred.