[L.A. No. 30517. Nov. 28, 1977.]

DALE C. WALTERS, Plaintiff and Appellant, v.
ROBERT M. SLOAN et al., Defendants and Respondents.

---

**COUNSEL**

Roy C. Zukerman for Plaintiff and Appellant.

Robert J. Smith, Smith & Brissenden and Smith, Brissenden & Warner for Defendants and Respondents.

Memering, Stumbos, DeMers, Ford & Norris, David Fuller, Louis A. DeMers and Jerome M. Varanini as Amici Curiae on behalf of Defendants and Respondents.

---

**OPINION**

**CLARK, J.**—Plaintiff appeals from judgment of dismissal entered after demurrer to the second amended complaint was sustained without leave to amend.

The second amended complaint is summarized as follows: Robert and Madylon Sloan left their home in the charge of their 16-year-old daughter, Helen. Acting with their knowledge, and as their agent, Helen hosted a party attended by 200 people, many of whom were minors. She

provided her guests, including a named minor, with alcoholic beverages. Marijuana and dangerous drugs were also available at the party. Helen knew, or should have known, that those invited would become disruptive and a danger to others if they consumed the liquor and drugs in the quantities available.

Disorder developed. Plaintiff, in the course of his duties as a police officer was sent to the Sloan residence. When plaintiff attempted to arrest the named minor and fictitiously named defendants for being drunk in public, they attacked him causing personal injury and property damage.[1] The attack was a proximate result of Helen's unlawful serving of alcoholic beverages.

Rejecting claims that the venerable fireman's rule should be abolished, we reaffirm the rule and conclude that it precludes recovery in this case.

The fireman's rule provides that negligence in causing a fire furnishes no basis for liability to a professional fireman injured fighting the fire. Firemen, "whose occupation by its very nature exposes them to particular risks of harm, ' "cannot complain of negligence in the creation of the very occasion for [their] engagement." ' " (*Solgaard* v. *Guy F. Atkinson Co.* (1971) 6 Cal.3d 361, 369 [99 Cal.Rptr. 29, 491 P.2d 821].) While denominated the fireman's rule, the rule is applicable to policemen as well. (*Giorgi* v. *Pacific Gas & Elec. Co.* (1968) 266 Cal.App.2d 355, 357 [72 Cal.Rptr. 119].)[2]

The rule was born almost a century ago, earning nearly unanimous acceptance. (*Gibson* v. *Leonard* (1892) 143 Ill. 182 [32 N.E. 182, 184]; *Woodruff* v. *Bowen* (1893) 136 Ind. 431 [34 N.E. 1113, 1117]; *Burroughs Adding Mach. Co.* v. *Fryar* (1915) 132 Tenn. 612 [179 S.W. 127, 128]; *Pincock* v. *McCoy* (1929) 48 Idaho 227 [281 P. 371, 372]; *Aldworth* v. *F. W. Woolworth Co.* (1936) 295 Mass. 344 [3 N.E.2d 1008, 1010]; *Anderson* v. *Cinnamon* (1955) 365 Mo. 304 [282 S.W.2d 445, 447]; *Baxley* v.

---

[1]Causes of action directed against the named minor and fictitiously named defendants remain pending, unaffected by the judgment of dismissal as to the Sloan defendants.

[2]Other negligent conduct or willful misconduct may create liability to the injured fireman or policeman. (See *Giorgi* v. *Pacific Gas & Elec. Co.* (1968) 266 Cal.App.2d 355, 360 [72 Cal.Rptr. 119]; 2 Harper & James, The Law of Torts (1956) pp. 1503-1505.) Thus a police officer who while placing a ticket on an illegally parked car is struck by a speeding vehicle may maintain action against the speeder but the rule bars recovery against the owner of the parked car for negligent parking:

*Williams Construction Co.* (1958) 98 Ga.App. 662 [106 S.E.2d 799, 805]; *Roberts* v. *Rosenblatt* (1959) 146 Conn. 110 [148 A.2d 142, 144]; *Scheurer* v. *Trustees of Open Bible Church* (1963) 175 Ohio St. 163 [23 Ohio Ops.2d 453, 192 N.E.2d 38, 43]; see also Annot. 86 A.L.R.2d 1205, 1213; 35 Am.Jur.2d, Fires, § 45; 65 C.J.S., Negligence, § 63(110); 2 Harper & James, The Law of Torts (1956) § 27.14, p. 1501.)

In recent years, the rule has been repeatedly attacked as being "behind the times," based on outdated concepts of tort liability. However, the courts in this and other jurisdiction have answered the attacks, pointing out the rule is premised on sound public policy and is in accord with—if not compelled by—modern tort liability principles. (*Solgaard* v. *Guy F. Atkinson Co., supra,* 6 Cal.3d 361, 369; *Schrimscher* v. *Bryson* (1976) 58 Cal.App.3d 660, 665-666 [130 Cal.Rptr. 125]; *Scott* v. *E. L. Yeager Constr. Co.* (1970) 12 Cal.App.3d 1190, 1194 et seq. [91 Cal.Rptr. 232]; *Giorgi* v. *Pacific Gas & Elec. Co., supra,* 266 Cal.App.2d 355, 357 et seq.; *Maltman* v. *Sauer* (1975) 84 Wn.2d 975 [530 P.2d 254, 257]; *Erickson* v. *Toledo, Peoria & Western Railroad* (1974) 21 Ill.App.3d 546 [315 N.E.2d 912, 913]; *Spencer* v. *B. P. John Furniture Corporation* (1970) 255 Ore. 359 [467 P.2d 429, 431]; *Horcher* v. *Guerin* (1968) 94 Ill.App.2d 244 [236 N.E.2d 576, 578]; *Chesapeake & Ohio Railway Company* v. *Crouch* (1968) 208 Va. 602 [159 S.E.2d 650, 653]; *McGee* v. *Adams Paper & Twine Co.* (1966) 26 App.Div.2d 186 [271 N.Y.S.2d 698, 706]; *Aravanis* v. *Eisenberg* (1965) 237 Md. 242 [206 A.2d 148, 153]; *Buren* v. *Midwest Industries, Inc.* (Ky. 1964) 380 S.W.2d 96, 97-99; *Jackson* v. *Velveray Corp.* (1964) 82 N.J.Super. 469 [198 A.2d 115, 121]; *Krauth* v. *Geller* (1960) 31 N.J. 270 [157 A.2d 129, 130-131].)[3]

The earliest cases developed the fireman's rule within the context of landowner liability; the landowner was not liable for dangerous conditions known to the claimant. (E.g., *Pauly* v. *King* (1955) 44 Cal.2d 649, 653 [284 P.2d 487]; *Giorgi* v. *Pacific Gas & Elec. Co., supra,* 266 Cal.App.2d 355, 358; *Anderson* v. *Cinnamon, supra,* 365 Mo. 304 [282 S.W.2d 445, 448].) The hazard being known, no duty existed to warn. Except for the youngest of children, all are held to knowledge of fire's danger (Rest.2d Torts, § 496D, com. d; *Courtell* v. *McEachen* (1959) 51

---

[3]*Bilyeu* v. *Standard Freight Lines* (1960) 182 Cal.App.2d 536 [6 Cal.Rptr. 65], assertedly to the contrary, did not discuss the fireman's rule.

Although in a number of cases policemen and firemen have been permitted recovery for negligence for injuries incurred while engaged in their duties as employees (e.g., *Witt* v. *Jackson* (1961) 57 Cal.2d 57, 69 [17 Cal.Rptr. 369, 366 P.2d 641]), the negligent act complained of in such cases did not create the occasion for the officer's or fireman's employment.

Cal.2d 448, 458 [334 P.2d 870]), and no one is more knowing than the fireman.

While modernizing has brought the law of landowner liability into accord with current concepts of tort liability by eliminating formalistic categories—invitees, licensees, trespassers (see *Rowland* v. *Christian* (1968) 69 Cal.2d 108 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496])—the fireman's rule is not based on such categorizations. Under the old rule, all persons within its scope were denied recovery when injured while voluntarily confronting a known peril with full realization of the risk. (See, e.g., Rest.2d Torts, *supra,* §§ 343A, 496A.) The changes wrought by *Rowland* do not relate to the fireman's rule.

■ Rather, the fireman's rule is based on a principle as fundamental to our law today as it was centuries ago. The principle is not unique to landowner cases but is applicable to our entire system of justice—one who has knowingly and voluntarily confronted a hazard cannot recover for injuries sustained thereby. We have consistently applied this concept in our recent pronouncements in other cases of basic tort doctrine. These include cases dealing with product liability (*Luque* v. *McLean* (1972) 8 Cal.3d 136, 145 [104 Cal.Rptr. 443, 501 P.2d 1163]), comparative fault (*Li* v. *Yellow Cab Co.* (1975) 13 Cal.3d 804, 824-825 [119 Cal.Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393]), and employee negligence (*Gyerman* v. *United States Lines Co.* (1972) 7 Cal.3d 488, 500 et seq. [102 Cal.Rptr. 795, 498 P.2d 1043]; see *Spencer* v. *G. A. MacDonald Constr. Co.* (1976) 63 Cal.App.3d 836, 861-865 [134 Cal.Rptr. 78]).

The principle denying recovery to those voluntarily undertaking the hazard causing injury is fundamental in a number of doctrines, including nullification of the duty of care, satisfaction of the duty to warn because the hazard is known, contributory negligence, and assumption of risk, as well as in the fireman's rule. (See Prosser, Torts (4th ed. 1971) p. 439 et seq.; *Chesapeake and Ohio Railway Company* v. *Crouch, supra,* 159 S.E.2d 650, 653.) It is unnecessary to attempt to separate the legal theories or to catalog their limitations. The rule finds its clearest application in situations like that before us—a person who, fully aware of the hazard created by the defendant's negligence, voluntarily confronts the risk for compensation.

A second reason underlying the fireman's rule does not have a significant historical background, but rather is a modern one of public policy, adopted by progressive courts and based on fundamental

concepts of justice. As succinctly stated in *Solgaard* v. *Guy F. Atkinson Co., supra,* 6 Cal.3d 361, 369, firemen " ' "cannot complain of negligence in the creation of the very occasion for [their] engagement." ' (*Giorgi* v. *Pacific Gas & Electric Co.,* 266 Cal.App.2d 355 . . . .)"

Former Chief Justice Weintraub of the Supreme Court of New Jersey explained the principle. "The question is ultimately one of public policy, and the answer must be distilled from the relevant factors involved upon an inquiry into what is fair and just. . . . [¶] [I]t is the fireman's business to deal with that very hazard [the fire] and hence, perhaps by analogy to the contractor engaged as an expert to remedy dangerous situations, he cannot complain of negligence in the creation of the very occasion for his engagement. In terms of duty, it may be said there is none owed the fireman to exercise care so as not to require the special services for which he is trained and paid. Probably most fires are attributable to negligence, and in the final analysis the policy decision is that it would be too burdensome to charge all who carelessly cause or fail to prevent fires with the injuries suffered by the expert retained with public funds to deal with those inevitable, although negligently created, occurrences. Hence, for that risk, the fireman should receive appropriate compensation from the public he serves both in pay which reflects the hazard and in workmen's compensation benefits for the consequences of the inherent risks of the calling." (*Krauth* v. *Geller, supra,* 157 A.2d 129, 130-131.)

California is not insensitive to its obligation to compensate public safety officers for hazards faced or for injuries received. Firemen and policemen are paid for the work they perform including preparation for facing the hazards of their professions and dealing with perils when they arise. When injury occurs, liberal compensation is provided. In addition to the usual medical and disability benefits ordinarily provided all employees covered by the Workers' Compensation Act, firemen and policemen are provided special benefits.

First, they receive special presumptions of industrial causation as to certain disabilities. (Lab. Code, § 3212.) Second, special death benefits apply to public safety officers if they are under the Public Employees Retirement System. (Gov. Code, § 21363 et seq.) Third, if under that system or the County Employees Retirement Law of 1937, they are entitled to an optional leave of absence for up to one year with full pay. (Lab. Code, §§ 4800, 4850.) Fourth, their permanent disability benefits are fully payable despite retirement, and are not reduced by disability pensions even when both are paid for the same injury. (*City of Palo Alto*

v. *Industrial Acc. Com.* (1965) 232 Cal.App.2d 305, 306 et seq. [42 Cal.Rptr. 822].) While the employees of some cities are not under the Public Employees Retirement System and in certain circumstances their disability benefits are offset by disability pension payments (e.g., *Symington* v. *City of Albany* (1971) 5 Cal.3d 23 [95 Cal.Rptr. 206, 485 P.2d 270]; *Lyons* v. *Workmen's Comp. Appeals Bd.* (1975) 44 Cal.App.3d 1007 [119 Cal.Rptr. 159]), it is apparent from the cases discussing the question that the special disability pensions and other benefits payable to firemen and policemen substantially exceed ordinary disability compensation benefits. (*Id.*)

Because public agencies pay death benefits and disability compensation to the injured fireman and policeman, it is apparent that under *Witt* v. *Jackson* (1961) 57 Cal.2d 57, 69 et seq. [17 Cal.Rptr. 369, 366 P.2d 641], much of the recovery which would result from abolition of the fireman's rule will finally be returned to those agencies rather than to the injured public employee. Recognizing the principle that an injured employee should not be entitled to double recovery, *Witt* held that where an employee or his survivors recover damages from a negligent third party, the employer, free from fault, is entitled to a lien against the recovery to the extent that it includes compensation benefits paid by the employer. In addition to an employer's lien, the Public Employees Retirement System may recover half of any survivor benefits paid by it. (Gov. Code, § 21450 et seq.; *Board of Administration* v. *Kuppens* (1975) 49 Cal.App.3d 758, 761 et seq. [122 Cal.Rptr. 856].)

Additionally, abolition of the fireman's rule would burden our courts with litigation among the employer public agency, the retirement system, and the negligence insurer. Whether the employee is ultimately compensated with money derived from taxes or from insurance, the public pays the bill.

 It is asserted that the fireman's rule should not apply where negligence is predicated on a violation of statute such as Business and Professions Code section 25658, subdivision (a) (furnishing alcoholic beverages to persons under the age of 21), because the Legislature has established a public policy which courts should promote in negligence actions. Courts have given effect to legislative policies by application of the negligence per se doctrine as now codified in Evidence Code section 669. Under the doctrine, violation of a statute gives rise to a presumption of negligence in the absence of justification or excuse, provided that the "person suffering . . . the injury . . . was one of the class of persons for

whose protection the statute . . . was adopted." (Evid. Code, § 669, subd. (a) (4); *Vesely* v. *Sager* (1971) 5 Cal.3d 153, 164-165 [95 Cal.Rptr. 623, 486 P.2d 151]; 4 Witkin, Summary of Cal. Law (8th ed. 1974) pp. 2810-2811.)

Ordinarily, a criminal statute is enacted not to protect policemen from injury while investigating or terminating the prohibited conduct but rather to protect the public. Enforcement of any criminal statute causes policemen to confront persons violating the statute, thereby imposing a confrontation and risk to the officer where none existed before. An officer called to enforce a criminal statute is thus not one of the class of persons for whose protection the criminal statute is adopted.

The negligence causing injury alleged against defendants Sloan is furnishing alcoholic beverages to persons under 21 resulting in their becoming drunk. The same negligence occasioned summoning the police.

Based on sound legal theory and solid public policy, the fireman's rule has served us well. We reaffirm it and conclude that it bars this action.

The judgment is affirmed.

Mosk, J., Richardson, J., Wright, J.,* and Sullivan, J.,† concurred.

**TOBRINER, Acting C. J.**—I dissent.

This case poses two questions: (1) whether a policeman, injured in the line of duty, is barred by the so-called "fireman's rule" from recovering damages from a party whose negligence proximately caused the injury; and (2) whether a social host who furnishes alcoholic beverages to a minor or obviously intoxicated guest can be held liable to an individual injured as a proximate cause of such intoxication. The majority conclude that the police officer's action is barred by the fireman's rule and consequently do not reach the social host issue. As I explain, I disagree

---

*Retired Chief Justice of California sitting under assignment by the Acting Chairperson of the Judicial Council.

†Retired Associate Justice of the Supreme Court sitting under assignment by the Chairperson of the Judicial Council.

with the majority's analysis and conclude that the outmoded fireman's rule should not be perpetuated in this state. Although, in light of this conclusion, it would normally be appropriate for me to reach and resolve the social host issue, because that issue is presently pending before this court in another matter[1] I shall confine this dissent to a discussion of the fireman's rule.

> *A policeman or fireman should not be precluded from recovering damages for injuries sustained in the line of duty as the proximate result of another's negligence simply because such injuries arise out of a foreseeable risk of his occupation.*

Relying upon the "fireman's rule" which, inter alia, precludes a fireman who is injured by a fire from recovering against one whose negligence caused the fire, the majority hold that a policeman is similarly barred from maintaining a cause of action against an individual whose negligence occasioned the officer's exposure to danger. Although I doubt that policemen can be distinguished from firemen for purposes of the fireman's rule as plaintiff urges, I believe that plaintiff's suit is not barred on this theory for a more basic reason. In my view, the fireman's rule itself, representing an unwarranted exception to the generally applicable duty of care tort standard, should not be followed in California.

Although the fireman's rule is of ancient vintage (see Annot. (1921) 13 A.L.R. 637), no court in this state explicitly embraced the doctrine until 1968. In *Giorgi* v. *Pacific Gas & Elec. Co.* (1968) 266 Cal.App.2d 355 [72 Cal.Rptr. 119], the Court of Appeal ruled that a paid fireman has no cause of action against a person whose passive negligence caused the fire that injured the fireman. Two years later, in *Scott* v. *E. L. Yeager Constr. Co.* (1970) 12 Cal.App.3d 1190 [91 Cal.Rptr. 232], another Court of Appeal subsequently endorsed the rule and extended it to bar a fireman's suit against one whose active negligence had caused the explosion that injured him. Although our court has discussed the fireman's rule in passing (*Solgaard* v. *Guy F. Atkinson Co.* (1972) 6 Cal.3d 361, 369 [99 Cal.Rptr. 29, 491 P.2d 821]), we have never directly appraised the soundness of the rule nor applied it to bar recovery by a fireman or any other injured employee.

In evaluating the present validity of the fireman's rule we must place it in perspective by reviewing it against the background of legal principles

---

[1] *Coulter* v. *Superior Court* (S.F. 23677, hg. granted Aug. 11, 1977).

that generally govern an employee's right to recover for injuries sustained in the course of employment as a proximate result of a third party's negligence. A leading textwriter has summarized the general rule in this state as follows: "An employee who sustains injury arising out of and in the course of his employment because of the negligence of a third party, not his employer, may bring a civil action for damages against such third party in the same manner as though his injury were not work-connected. As a matter of fact, the employee's right against the negligent third party is precisely the same as if the injury had occurred outside the employer-employee relationship. . . . [¶] An employee's claim against a third party may properly arise from any situation where occupational injury or death arises from the latter's fault." (2 Hanna, Cal. Law of Employee Injuries and Workmen's Compensation, §§ 23.01, 23.02, pp. 23-2, 23-5; see, e.g., Lab. Code, § 3852; *Witt* v. *Jackson* (1961) 57 Cal.2d 57, 69 [17 Cal.Rptr. 369, 366 P.2d 641]; *Lamoreux* v. *San Diego etc. Ry. Co.* (1957) 48 Cal.2d 617, 624-625 [311 P.2d 1]; *Baugh* v. *Rogers* (1944) 24 Cal.2d 200, 214 [148 P.2d 633, 152 A.L.R. 1043].)[2]

Applying this general rule, California courts have permitted injured employees to maintain traditional tort actions against third parties for virtually all negligently inflicted injuries, allowing, for example, highway workers to recover for injuries suffered as the result of a third party's negligent driving (see, e.g., *Scott* v. *City & County of San Francisco* (1949) 91 Cal.App.2d 887, 890 [206 P.2d 45]; *Roddy* v. *American Smelting etc. Co.* (1939) 34 Cal.App.2d 457 [93 P.2d 841]; *Mecham* v. *Crump* (1934) 137 Cal.App. 200 [30 P.2d 568]), employees of a subcontractor to recover for injuries suffered on a construction job as a result of the general contractor's or owner's negligence (see, e.g., *Woodcock* v. *Fontana Scaffolding & Equip. Co.* (1968) 69 Cal.2d 453 [72 Cal.Rptr. 217, 445 P.2d 881]; *Ferrel* v. *Safway Steel Scaffolds* (1962) 57 Cal.2d 651 [21 Cal.Rptr. 575, 371 P.2d 311]), and mechanics to obtain recovery for job-related injuries proximately caused by a customer or his agent. (See, e.g., *Housewright* v. *Pacific Far East Line, Inc.* (1964) 229 Cal.App.2d 259 [40 Cal.Rptr. 208].) So long as the negligent tortfeasor is not the plaintiff's

---

[2]Professor Larson explains the rationale of this general principle: "[I]n compensation law, social policy has dispensed with fault concepts to the extent necessary to ensure an automatic recovery by the injured workman; but the disregard of fault goes no further than to accomplish that object, and, with payment of the workman assured, the quest of the law for the actual wrongdoer may proceed in the usual way. [¶] So, it is elementary that if a stranger's negligence was the cause of injury to claimant in the course of employment, the stranger would not be in any degree absolved of his normal obligation to pay damages for such an injury." (2a Larson, Workmen's Compensation Law, § 71.10, p. 14-2.)

employer, tort recovery has not been barred simply because the plaintiff was injured while performing his job.

Firemen—and, to some extent, policemen—have, however, traditionally found it more difficult than other employees to obtain recovery for negligently inflicted injuries incurred in the course of their employment. To a large extent, the explanation for this "second class" treatment lies in the historical vagaries of early common law property doctrine, which drew distinctions between a landowner's duties to "invitees" and to "licencees." (See, e.g., 2 Harper & James, The Law of Torts (1956) 1501-1505.)

Most employees who entered a landowner's premises during the course of their employment fell into the category of "business invitees" to whom the landowner owed a general duty of exercising reasonable care for their protection. Because firemen and policemen had the right to enter the landowner's premises whether or not they were "invited" and without regard to the landowner's consent, however, the early common law decisions regularly refused to categorize firemen and policemen as "invitees" and most often classified them as "mere licensees" to whom the landowner or occupier owed a much lesser standard of care. (See, e.g., *Pennebaker* v. *San Joaquin etc. Co.* (1910) 158 Cal. 579, 587-588 [112 P. 459]; *Nastasio* v. *Cinnamon* (Mo. 1956) 295 S.W.2d 117, 119. See generally Note (1966) 19 Vand.L.Rev. 407; Annot. (1921) 13 A.L.R. 637.)

In light of this "licensee" classification, firemen and policemen could recover for injuries sustained as a result of a dangerous condition of the premises only if they could prove that the occupier had actual knowledge of the danger and had failed to take appropriate precautions, whereas other employees could generally recover so long as the occupier should reasonably have discovered the defect and repaired it. (See, e.g., Prosser, Law of Torts (4th ed. 1971) pp. 376-398.) Moreover, given the general rule that an occupier bore no duty to protect a licensee from an obvious or patent danger on his premises, courts frequently reasoned that the occupier could not be held liable for the injuries which a fireman sustained as a result of the obvious danger of a fire, even if the fire had been proximately caused by the occupier's negligence. (See, e.g., *Buckeye Cotton Oil Co.* v. *Campagna* (1922) 146 Tenn. 389 [242 S.W. 646].) Thus, even though one who negligently caused a fire would normally be liable under the "rescue doctrine" for injuries sustained by those who attempted to avert the danger of the fire (see, e.g., *Haverstick*

v. *Southern Pac. Co.* (1934) 1 Cal.App.2d 605 [37 P.2d 146]), firemen traditionally had been excluded from such protection.

In *Rowland* v. *Christian* (1968) 69 Cal.2d 108 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496], of course, this court reviewed at some length the common law distinctions that had been drawn between invitees, licensees and trespassers, and concluded that with respect to all injured persons "[t]he proper test to be applied to the liability of the possessor of land . . . is whether in the management of his property he has acted as a reasonable man in view of the probability of injury to others. . . ." ,(69 Cal.2d at p. 119.) Defendants, and the majority, concede that in light of *Rowland* the historical "invitee-licensee" distinction can no longer justify the retention of a fireman's rule which places special disabilities on firemen or policemen.

Defendants assert, however, that while *Rowland* may permit a fireman to sue a possessor of land for injuries sustained while fighting a fire as a result of a defective or dangerous condition of the premises (accord *Bartholomew* v. *Klingler Co.* (1975) 53 Cal.App.3d 975 [126 Cal.Rptr. 191]), our *Rowland* decision does not affect the fireman's rule insofar as that rule precludes a fireman from recovering from one who negligently caused the fire in the first place. Pointing out that a person who negligently causes a fire may not necessarily be either a landowner or land occupier, defendants maintain that this separate prong of the fireman's rule, barring a fireman's cause of action against an individual who negligently causes a fire, survives our *Rowland* decision. As defendants suggest, the two California appellate court decisions which have endorsed the fireman's rule have applied the rule only in this limited context. (See *Giorgi* v. *Pacific Gas & Elec. Co., supra,* 266 Cal.App.2d 355, 357; *Scott* v. *E. L. Yeager Constr. Co., supra,* 12 Cal.App.3d 1190, 1194-1195.) Defendants contend that this limited doctrine of nonliability applies to policemen as well as to firemen, and bars plaintiff's recovery in the instant case because defendants' negligence, if any, simply created the occasion or need for plaintiff's normal employment services.

This contention, while properly noting that liability in the instant case does not necessarily turn on defendants' status as landowners, fails to meet the fundamental question as to why an injured fireman or a policeman should be precluded from recovering damages from *any* third party tortfeasor whose negligence proximately causes his injuries. A tortfeasor who negligently causes a fire is, of course, generally liable for

all injuries proximately caused by the fire, including injuries sustained by rescuers who attempt to mitigate the damage which an uncontrolled fire might work. In light of the general duty of care imposed by Civil Code section 1714, the burden remains on defendants to demonstrate that overriding policy considerations, if any, justify a rule that bars recovery by a fireman or policeman under circumstances in which all other individuals may recover for their injuries. (See *Rowland* v. *Christian*, *supra*, 69 Cal.2d at p. 112.)

Defendants point to a number of policy considerations which courts have relied on in the past in barring a fireman's recovery from one who negligently causes a fire. Defendants emphasize that a fireman is trained, and paid, to confront and extinguish fires, that a fireman knows that his occupation will subject him to dangers, and that a negligently caused fire often poses no greater hazards than one that is accidentally set. Defendants also suggest that public policy dictates that the risk of damages for injuries from fires be spread to the public generally, rather than placed upon those who negligently cause fires. Finally, defendants assert that because the determination of the cause of a fire is often an onerous burden, considerations of efficient judicial administration support the preservation of the fireman's rule. As I explain, none of these reasons suffice to overcome the general common law principle that one is responsible for an injury to another caused by the tortfeasor's want of ordinary care.

Proponents of the fireman's rule argue most frequently that it is the fireman's job to extinguish fires and the policeman's job to make arrests. They conclude that a fireman or a policeman can base no tort claim upon damage caused by the very risk that he is paid to encounter and with which he is trained to cope. The argument, in essence, is that the fireman or policeman, in accepting the salary and fringe benefits offered for his job, assumes all normal risks inherent in his employment as a matter of law, and thus may not recover from one who negligently creates such a risk. (See, e.g., *Maltman* v. *Sauer* (1975) 84 Wn.2d 975 [530 P.2d 254, 257]; *Buren* v. *Midwest Industries, Inc.* (Ky. 1964) 380 S.W.2d 96, 98-99.)

The fallacy in this argument is simply that it proves too much. Under this analysis, an employee would routinely be barred from bringing a tort action whenever an injury he suffers at the hands of a negligent tortfeasor could be characterized as a normal inherent risk of his employment. Yet, as noted above, past California cases have regularly

permitted highway workers—whose jobs obviously subject them to the "inherent risk" of being injured by a negligent driver—to recover for damages inflicted by such third party negligence (see, e.g., *Mecham* v. *Crump, supra,* 137 Cal.App. 200), and have permitted construction workers—whose employment poses numerous risks of injury at the hands of another—to recover tort damages for work-related injuries so long as the negligent tortfeasor is not their employer. (See, e.g., *Woodcock* v. *Fontana Scaffolding & Equip. Co., supra,* 69 Cal.2d 452.)

As these and countless other cases demonstrate, while policemen and firemen regularly face substantial hazards in the course of their employment and are, theoretically at least, compensated for such risks, a host of other employees—highway repairmen, high rise construction workers, utility repairmen and the like—frequently encounter comparable risks in performing their jobs and, again theoretically, also receive compensation for such risks. California decisions have never perceived such theoretical compensation as a sufficient basis for barring the employee's cause of action against a negligent tortfeasor.

Three cases involving injuries to policemen demonstrate this point. In *Witt* v. *Jackson, supra,* 57 Cal.2d 57 [17 Cal.Rptr. 369, 366 P.2d 641], for example, plaintiff, a Los Angeles policeman, was injured when the police car in which he was driving was struck from the rear as he slowed down after pulling another car over to the side of the road. Although the risk of such an accident was obviously a foreseeable hazard of plaintiff's employment, and although plaintiff received workers' compensation benefits for the injury as well as his normal pay and fringe benefits, the policeman was still permitted to recover full tort damages from the negligent driver.[3] Similarly, in *McAllister* v. *Cummings* (1961) 191 Cal.App.2d 1, 9-11 [12 Cal.Rptr. 418], a policeman in pursuit of a suspected traffic violator was injured when a third party tortfeasor failed to yield the right-of-way; although the risk of such an injury was unquestionably inherent in the police officer's job, the *McAllister* court

---

[3]Some decisions suggest that because firemen and policemen frequently enjoy the benefits of special disability programs, such employees have already received compensation for their work-related injuries and are entitled to no additional tort remedy. (See *Romedy* v. *Johnston* (Fla.App. 1967) 193 So.2d 487, 491; *Krauth* v. *Geller* (1960) 31 N.J. 270 [157 A.2d 129, 131].) As *Witt* demonstrates, California courts have never viewed such benefits as a justification for barring a police officer's tort recovery. The provision of such special disability programs does not necessarily reflect an intent to bar the individual officer's tort action, but rather may simply reflect the fact that a policeman or fireman often sustains injury in the absence of demonstrable negligence or that even if negligence can be demonstrated, tortfeasors are not always capable of paying for the damage they cause.

unequivocably held that the officer had not "assumed the risk" of such an injury so as to bar a normal tort recovery against the negligent driver. (See, e.g., *Bencich* v. *Market St. Ry. Co.* (1938) 29 Cal.App.2d 641 [85 P.2d 556] (fireman injured by negligently driven streetcar may recover from private streetcar company).)

Finally, the case of *Bilyeu* v. *Standard Freight Lines* (1960) 182 Cal.App.2d 536 [6 Cal.Rptr. 65] is particularly apposite to the present case. In *Bilyeu,* a truck driver negligently dropped two heavy steel drums upon a highway where they posed a hazard to other drivers. An on-duty highway patrolman arrived on the scene and, while attempting to push the steel drums off the highway, severely injured his back; the injury led to the patrolman's retirement at age 33. The patrolman sued the driver's employer to recover damages for the injuries proximately caused by the driver's negligence and, despite the defendant's claim that the patrolman had assumed the risk of such danger arising out of his employment, the Court of Appeal affirmed the patrolman's recovery. Although the fireman's rule was not discussed, the appellate court explicitly rejected the claim that because the defendant's negligence had simply created a need for the police officer's services such negligence could not be the proximate cause of the injury. (182 Cal.App.2d at pp. 541-544; cf. *Schrimsher* v. *Bryson* (1976) 58 Cal.App.3d 660 [130 Cal.Rptr. 125].)

Accordingly, neither the fact that the injury in the instant case may have resulted from a reasonably foreseeable risk of plaintiff's employment nor the fact that defendants' negligence created the need for plaintiff's services is sufficient under past authorities to bar this action.

Some courts which have nevertheless upheld the fireman's rule have alternatively emphasized that a negligently caused fire frequently poses no greater danger to a fireman than a fire that results from nonnegligent causes. (See, e.g., *Romedy* v. *Johnston, supra,* 193 So.2d 487, 491; *Aravanis* v. *Eisenberg* (1965) 237 Md. 242 [206 A.2d 148, 153].) Since a fireman cannot recover damages for injuries sustained in a nonnegligently caused fire, these decisions reason that he should not be allowed recovery based on the "fortuity" that a particular fire was negligently caused. This "reasoning" is simply a non sequitur. In all negligence actions, of course, a plaintiff's recovery rests on the "fortuity" of his being injured by negligent conduct; if he suffered similar injuries in the absence of negligence, recovery would generally be precluded. Thus, this explanation cannot justify a departure from normal tort principles.

A related contention is that because both negligently caused and nonnegligently caused fires create similar hazards for firemen, a fireman really incurs no extra or special risk at the hands of a tortfeasor who negligently causes a fire. Firemen, of course, receive their normal wage whether or not fires actually occur, but whenever a fire is negligently set a fireman is required to encounter an added substantial risk that he would *not* have faced in the absence of the tortfeasor's negligence. In this respect, the fireman is no different than any other person injured as a result of negligent conduct.

An additional argument that often is forcefully urged in support of the fireman's rule is that the rule serves the beneficial public policy of "spreading the risk" of a fireman's injuries to all taxpayers, and avoids imposing an unreasonable burden on a single negligent tortfeasor. (See, e.g., *Giorgi* v. *Pacific Gas & Elec. Co., supra,* 266 Cal.App.2d 355, 360; *Krauth* v. *Geller, supra,* 157 A.2d 129, 131; *Scheurer* v. *Trustees of Open Bible Church* (1963) 175 Ohio St. 163 [23 Ohio Ops.2d 453, 192 N.E.2d 38, 43].) To be sure, the policy of spreading the risk is a sound one, comporting with one of the central themes of modern tort law which attempts to ensure that an injured party does not bear a staggering cost as a result of an unfortunate injury. (See, e.g., *Greenman* v. *Yuba Power Products, Inc.* (1963) 59 Cal.2d 57, 63-64 [27 Cal.Rptr. 697, 377 P.2d 897, 13 A.L.R.3d 1049].) For several reasons, however, I cannot agree that this risk-spreading policy supports the preservation of the fireman's rule.

In the first place, the suggestion that the retention of the fireman's rule spreads the risk of the fireman's injuries from the negligent tortfeasor to the taxpaying public cannot stand. In denying a fireman any recovery from a negligent tortfeasor, the fireman's rule does not simply require the fireman to recover his tort damages from the public at large, but instead totally precludes the fireman from recovering these damages at all. Although the fireman may, of course, recover workers' compensation benefits from the general public, all other injured workers are entitled to recover such compensation benefits and also to obtain their additional tort damages from third party tortfeasors. Thus, instead of spreading the risk of fireman's injuries, the firemen's rule in reality requires the injured fireman personally to shoulder a loss which other employees are not required to bear.[4]

---

[4] The fact that firemen and policemen are public, rather than private, employees affords no basis for the fireman's rule. As the cases cited above demonstrate, the public status of a worker's employer has never been viewed as a justification for denying an

Moreover, although some courts have been apprehensive that the abolition of the fireman's rule will necessarily place an unreasonable burden on a single negligent tortfeasor (see, e.g., *Krauth* v. *Geller, supra,* 157 A.2d 129, 131), these decisions appear to ignore the significant role that insurance presently plays in spreading the risk of loss among policyholders. Many fires arise on business premises or as a result of commercial activities (see, e.g., *Giorgi* v. *Pacific Gas & Elec. Co., supra,* 266 Cal.App.2d 355; *Scott* v. *E. L. Yeager Constr. Co., supra,* 12 Cal.App.3d 1190) and such commercial ventures will normally carry liability insurance that would cover a fireman's tort action. In the case of such commercial enterprises I can perceive no justification for failing to treat the negligent injury of a fireman as as much a "cost of doing business" as the negligent injury of any other person in the course of the commercial operation. In addition, comprehensive "homeowners" policies available to the average homeowner or renter commonly contain personal liability coverage that would shield a negligent individual from the full brunt of the fireman's claim.[5] Accordingly, the "spreading the risk" desideratum does not justify the retention of the fireman's rule.

Finally, some cases have asserted that the fireman's rule can be sustained because it promotes judicial efficiency by eliminating the need for lengthy trials to determine the cause of a fire. (See, e.g., *Giorgi* v. *Pacific Gas · & Elec. Co., supra,* 266 Cal.App.2d 355, 360.) Courts, however, are regularly called upon to determine the cause of fires in the course of resolving issues relating to liability for property damage or for personal injuries to persons other than firemen. Defendants suggest no reason why the causation issue poses any greater burden for the judicial system when it is a fireman who is the victim of the fire. Accordingly, this rationale, too, fails to sustain the fireman's rule.

An examination of the numerous policy arguments used to justify the fireman's rule, then, fails to uncover a compelling reason for honoring

---

injured worker recovery against a negligent third party tortfeasor. (See, e.g., *Witt* v. *Jackson, supra,* 57 Cal.2d 57; *McAllister* v. *Cummings, supra,* 191 Cal.App.2d 1; *Bencich* v. *Market St. Ry. Co., supra,* 29 Cal.App.2d 641. See also *Miller* v. *Pacific Constructors, Inc.* (1945) 68 Cal.App.2d 529 [157 P.2d 57]; *O'Shea* v. *Pacific Gas & Elec. Co.* (1936) 18 Cal.App.2d 32 [62 P.2d 1066].)

[5]Moreover, inasmuch as defendants concede that under *Rowland* v. *Christian, supra,* 69 Cal.2d 108, a homeowner may be held liable if a fireman is injured because of a defect in the premises which the homeowner should reasonably have repaired, I cannot understand why the homeowner should be shielded from liability for injuries caused by the negligent setting of a fire, since the latter liability poses no greater or more direct a burden on the individual negligent party than the former.

this exception to the general principles of tort law. Courts should be hesitant to cut holes in the carefully woven fabric of the requirement of due care, and to deny to certain selected classifications that protection. Such an approach recalls the now discarded doctrine that the property owner owed diminished duties of due care to categories of trespassers, licensees and the like. As I have explained, we have repudiated this varigated application of tort liability in *Rowland.* v. *Christian, supra,* 69 Cal.2d 108, making clear that one standard, as articulated in Civil Code section 1714, would apply uniformly to protect all such victims. Indeed, one of the older bases of the fireman's rule was that the fireman's entrance to a burning building should be treated as that of a licensee, and that consequently he should be entitled only to protection against hidden dangers actually known to the occupier and unrepaired by him; that rule has been abandoned by the more recent decisions. The larger notion that special and differentiated duties of due care should be established for different occupations, a principle upon which the fireman's rule rests, is subject to the same doctrinal deficiency.

Accordingly, I conclude that plaintiff's recovery should not be barred on the basis of the fireman's rule.

Appellant's petition for a rehearing was denied December 28, 1977. Bird, C. J., and Tobriner, J., were of the opinion that the petition should be granted.

